# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN J. BOLUS, <br> KAREN BOLUS, <br> PRESTON BOLUS, and <br> MINUTEMAN SPILL RESPONSE, INC., <br><br> Plaintiffs. <br><br> v. <br><br> AMY CARNICELLA, et al., <br><br> Defendants. | No. 4:15-CV-01062 <br><br> (Judge Brann) |

## MEMORANDUM OPINION

### SEPTEMBER 14, 2018

Defendants moved for partial judgment on the pleadings. For the reasons that follow, that motion will be granted in part and denied in part.[1]

## I. BACKGROUND[2]

At the time of the events underlying this case, Plaintiffs Brian and Karen Bolus (husband and wife) lived in Lewisburg, Pennsylvania with their son,

---

[1] Plaintiffs have requested oral argument on Defendants' motion. ECF No. 58. That request will be denied.

[2] When considering a motion to dismiss for failure to state a claim, a court assumes the truth of all factual allegations made in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The material in this section, then, is taken entirely from Plaintiffs' Amended Complaint (ECF No. 40), and is presumed true for present purposes.

Plaintiff Preston Bolus.[3] Brian Bolus was the president and sole shareholder of Plaintiff Minuteman Spill Response, Inc. ("Minuteman"), a company specializing in environmental services.[4]

On May 29, 2013, a series of searches were conducted on Plaintiffs' property by several law enforcement officers, including Richard Bosco, David Ellis, Christopher Antonucci, and Paul Zimmerer.[5] The warrants authorizing these searches were obtained in the course of a Pennsylvania grand jury investigation, which investigation was directed by Pennsylvania's Office of Attorney General ("OAG"); the then Attorney General, Kathleen Kane; and deputy attorneys general Amy Carnicella and Robert Stewart.[6]

On May 23, 2014, the investigating grand jury returned a presentment against Minuteman and Brian Bolus, among others.[7] As a result, prosecutions were commenced in five separately-docketed cases in the Montour County, Union County, and Northumberland County Courts of Common Pleas.[8] However, although the Commonwealth originally pursued more than one hundred criminal charges (nearly ninety of which were felonies), all were eventually dismissed or

---

[3] Amended Complaint ¶¶ 6, 56, 203.

[4] *Id.* ¶¶ 38-39.

[5] *Id.* ¶ 56.

[6] *Id.* ¶¶ 9-10, 54-56.

[7] *Id.* ¶ 153.

[8] *Id.* ¶ 154.

*nolle prossed* except for two misdemeanor charges against Minuteman, for which Minuteman entered into the Commonwealth's Accelerated Rehabilitative Disposition ("ARD") program.[9]

Despite this seemingly favorable outcome, the criminal proceedings and investigation-related seizure of Plaintiffs' assets nevertheless seriously impaired Minuteman's business.[10] As a result, it was forced to file for bankruptcy.[11] In the bankruptcy court, Minuteman filed an adversary proceeding against Ms. Carnicella, Mr. Stewart, Mr. Bosco, Mr. Antonucci, and the OAG, claiming that the seizure of its assets was in violation of Minuteman's constitutional rights.[12] That claim was withdrawn to this Court[13] and consolidated with the instant action.[14] After Minuteman's estate was fully administered, the bankruptcy proceedings were closed on December 28, 2016.[15] As part of the approved

---

[9] The dockets for these cases appear at ECF No. 57-5.

[10] Amended Complaint ¶¶ 78-83.

[11] *In re Minuteman Spill Response, Inc.*, No. 4:14-BK-01825 (Bankr. M.D. Pa. filed Apr. 18, 2014).

[12] *Minuteman Spill Response, Inc. v. Amy Carnicella*, No. 4:14-AP-00212 (Bankr. M.D. Pa. filed Sept. 3, 2014).

[13] *Minuteman Spill Response, Inc. v. Amy Carnicella*, No. 4:16-CV-00343 (M.D. Pa. filed Feb. 25, 2016).

[14] ECF No. 24.

[15] *In re Minuteman Spill Response, Inc.*, No. 4:14-BK-01825 (Bankr. M.D. Pa.), ECF No. 1431.

Chapter 11 Plan, Minuteman's claims against Ms. Carnicella, Mr. Stewart, Mr. Bosco, Mr. Antonucci, and the OAG were assigned to Mr. Bolus.[16]

On December 21, 2017, Plaintiffs filed an amended complaint against the OAG, Ms. Kane, Ms. Carnicella, Mr. Stewart, Mr. Bosco, Mr. Ellis, Mr. Antonucci, Mr. Zimmerer, and Pennsylvania's current Attorney General, Joshua Shapiro.[17] That amended complaint contains seven counts: (1) a civil rights claim by Minuteman against all defendants; (2) a civil rights claim by Brian, Karen, and Preston Bolus against all defendants; (3) a malicious prosecution claim by Minuteman and Brian Bolus against all defendants; (4) a false arrest and detainment claim by Karen Bolus against all defendants; (5) an assault claim by Karen Bolus against all defendants; (6) a battery claim by Karen Bolus against all defendants; (7) a loss of consortium claim by Brian Bolus against all defendants; and (8) a loss of consortium claim by Karen Bolus against all defendants.[18] After Defendants answered the amended complaint,[19] they filed the instant Motion for Partial Judgment on the Pleadings.[20]

---

[16] *Id.*, ECF No. 1341-3 at 33-34.

[17] ECF No. 40.

[18] *Id.* ¶¶ 85-218.

[19] ECF No. 47.

[20] ECF No. 55.

## II. DISCUSSION

### A. Whether the OAG Is Entitled to Eleventh Amendment Immunity

The OAG argues that it is entitled to Eleventh Amendment immunity from all of Plaintiffs' claims. Plaintiffs assert that the OAG waived its sovereign immunity by filing a Proof of Claim against Minuteman in the bankruptcy proceedings.

The Eleventh Amendment shields states and state-related entities from suits for damages in federal court.[21] This immunity, however, may be waived.[22] One avenue to waiver is through 11 U.S.C. § 106(b),[23] which states that

> [a] governmental unit that has filed a proof of claim in [a bankruptcy] case is deemed to have waived sovereign immunity with respect to a claim against such government unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

Section 103(a) of that same title of the United States Code, however, states that this waiver is applicable only "in a case under chapter 7, 11, 12, or 13 of this title"—*i.e.*, only during bankruptcy proceedings.

It is undisputed that Minuteman's bankruptcy proceedings have been closed for some time, and that Minuteman's claim against the OAG was assigned to Brian

---

[21] *Bradley v. West Chester University*, 880 F.3d 643, 654 (3d Cir. 2018).

[22] *Atascadero State Hosp. v. Scanlon*, 43 U.S. 234, 238 (1985).

[23] Plaintiffs' Brief in Opposition (ECF No. 57) states that it is relying on 11 U.S.C. § 106(a). Due to the fact that Plaintiffs' argument is based on the OAG's filing of a proof of claim, however, this Court assumes that Plaintiffs meant to refer to 11 U.S.C. § 106(b).

Bolus during those proceedings. Consequently, the immunity waiver in 11 U.S.C. § 106(b) is inapplicable, both because Minuteman's claim is no longer "property of the estate" (as required by §106(b)) and because this claim is not being raised in a bankruptcy proceeding (a prerequisite under § 103(a) for the application of § 106(b)).

Therefore, the OAG is entitled to Eleventh Amendment immunity, and all claims against it will be dismissed.[24]

### B. Whether Ms. Carnicella and Mr. Stewart Are Entitled to Absolute Immunity

Ms. Carnicella and Mr. Stewart argue that they are entitled to absolute immunity because the complained-of acts were all allegedly committed while they were fulfilling their prosecutorial duties.

Prosecutors are entitled to the same absolute immunity from suit that they enjoyed at common law.[25] The scope of this immunity, however, is not limitless, and "a person [does not become] immune from suit for every wrong he commits just because he happens to be employed as a prosecutor."[26] Instead, prosecutors gain protection only when operating *qua* prosecutors—there is no immunity, for

---

[24] Defendants' Brief in Support also sought Eleventh Amendment immunity for individual defendants named in their official capacity. Plaintiffs' Brief in Opposition, however, made clear that plaintiffs were seeking to hold those defendants liable in their *individual*, not their personal capacity.

[25] *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976).

[26] *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011).

example, when "engag[ing] in . . . investigative or administrative tasks,"[27] even if the prosecutors happen to be collecting their prosecutor paycheck when doing so. To that end, courts utilize a "functional approach" when deciding whether or not to bestow the powerful shield of absolute immunity,[28] while keeping in mind that the burden of proof is on the defendant seeking protection.[29]

The United States Supreme Court has indicated that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding or appears in court to present evidence in support of a search warrant application."[30] To the extent that Plaintiffs are attempting to hold Defendants liable for conduct during or "in preparation for"[31] presentation of the case to the grand jury, or for acts committed while obtaining the warrants used to seize the Boluses' and Minuteman's property, Plaintiffs' claims will fail. The Supreme Court, however, has also indicated that "absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation."[32] Here, Plaintiffs have alleged

---

[27] *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009).

[28] *Rose v. Bartle*, 871 F.2d 331, 343 (3d Cir. 1989); *id.* at 344 ("[T]he appropriate inquiry in determining whether immunity is available involves the role in which the prosecutor is acting—an advocacy role, or an investigative role.").

[29] *Burns v. Reed*, 500 U.S. 478, 486 (1991); *see also id.* at 487 (noting that the Supreme Court has "been quite sparing in [its] recognition of absolute immunity and ha[s] refused to extend it any further than its justification would warrant").

[30] *Van de Kamp*, 555 U.S. at 343.

[31] *Rose*, 871 F.2d at 344-45.

[32] *Id.* at 343.

that Ms. Carnicella and Mr. Stewart "directed" the execution of the warrants at issue.[33] Although this allegation is fairly general and unspecific, this Court can—and therefore must[34]—infer that Ms. Carnicella and Mr. Stewart provided legal advice to law enforcement officials during this stage of the ongoing criminal investigation. Consequently, absolute immunity cannot be granted to Ms. Carnicella and Mr. Stewart at this time. Those defendants are, of course, free to raise this issue again at the summary judgment stage, after the development of a factual record.

### C. Whether Plaintiffs Sufficiently Alleged Their Claims Against Attorney General Joshua Shapiro

Attorney General Shapiro argues that the claims against him should be dismissed because Plaintiffs have failed to allege any facts implicating him in the complained-of conduct.

When considering a motion for judgment on the pleadings that argues that a plaintiff has failed to state a claim upon which relief can be granted, this Court utilizes the same standard of review as if it were considering a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6).[35] Therefore, to survive Mr. Shapiro's motion, Plaintiffs' complaint must "show that . . . [P]laintiff[s] ha[ve] a

---

[33] Amended Complaint ¶ 56.

[34] *Phillips v. County Of Allegheny*, 515 F.3d 224, 228 (3rd Cir. 2008).

[35] *Turbe v. Government of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

plausible claim for relief" against Mr. Shapiro, and must "show . . . entitlement [to such relief] with its facts."[36] Plaintiffs' complaint must be dismissed if its "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."[37]

Plaintiffs' complaint contains few allegations that mention Mr. Shapiro by name. Paragraphs 15 and 16 note that Joshua Shapiro is the current Attorney General of Pennsylvania and provide his office's physical address, and paragraph 144 alleges that Plaintiffs are entitled to injunctive relief in the form of an order requiring Mr. Shapiro to release certain previously-seized property. Unlike the other defendants, Mr. Shapiro is not alleged to have participated in the grand jury investigation, the execution of the search warrants, or the decision to prosecution in the first place. In fact, this Court can take judicial notice that Mr. Shapiro did not become attorney general until January 17, 2017, long after all of those events took place. The complaints' "bare-bones" allegations, then, do nothing except perhaps show that it is "possible" that Mr. Shapiro is liable to Plaintiffs in some way.

---

[36] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

[37] *Id.*

Plaintiffs' claims against Attorney General Shapiro, therefore, will be dismissed, but Plaintiffs will be granted leave to amend their complaint to correct this deficiency, if possible.

### D. Whether Minuteman's Entry into Pennsylvania's ARD Program Requires Dismissal of Plaintiffs' Malicious Prosecution Claims

Defendants argue that Plaintiffs' malicious prosecution claims should be dismissed because the underlying criminal prosecutions resulted in Minuteman's entry into Pennsylvania's ARD program.

To prove a malicious prosecution claim under Pennsylvania law, a plaintiff must show that the criminal "proceedings [at issue] . . . terminated in favor of the plaintiff."[38] As a matter of law, a prosecution that ends with the plaintiff's entry into Pennsylvania's ARD program "is not a favorable termination."[39] This is not to say, however, that Minuteman's entry into the ARD program on two of the more than one hundred original charges is a complete bar to Plaintiffs' malicious prosecution claims. As the Third Circuit has noted, determining whether a proceeding has terminated favorably is a fact-dependent inquiry.[40] Even if a plaintiff is convicted on some charges, he or she can proceed with a malicious prosecution claim vis-à-vis the other charges if "the circumstances—both the

---

[38] *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017).

[39] *Gilles v. Davis*, 427 F.3d 197, 211 (3d Cir. 2005).

[40] *Kossler v. Crisanti*, 564 F.3d 181, 188 (3d Cir. 2009) ("the result depends on the particular circumstances").

offenses as stated in the statute and the underlying facts of the case—indicate that the judgment as a whole . . . reflect[s] the plaintiff's innocence" on those other charges.[41]

At this stage of the proceeding, without the benefit of a factual record, this Court cannot conduct the necessary inquiry. Therefore, it will deny Defendants' motion to dismiss Plaintiffs' malicious prosecution claims.

## III. CONCLUSION

For the reasons stated above, Defendants' Motion for Partial Judgment on the Pleadings will be granted in part and denied in part. All claims against Pennsylvania's Office of the Attorney General and Attorney General Joshua Shapiro will be dismissed, but all other claims will survive. An appropriate order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[41] *Id.*