# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN J. BOLUS, *et al.*, | No. 4:15-CV-01062 |
| Plaintiffs, | (Judge Brann) |
| v. | |
| AMY CARNICELLA, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

**FEBRUARY 26, 2020**

## I. BACKGROUND

Plaintiffs Brian J. Bolus, Karen Bolus, Preston Bolus, and Minuteman Spill Response Inc. have served a subpoena on non-party Northridge Group, Inc., a firm that helps develop responses to environmental hazards.[1] Northridge has moved the Court to modify the subpoena's scope, which Northridge finds objectionable.[2]

## II. FACTS AND PROCEDURAL HISTORY[3]

### A. Plaintiffs' Subpoena

Plaintiffs directed their subpoena to Northridge on October 28, 2019.[4]

The subpoena defines "Communications" as follows.[5]

---

[1] *See* ECF No. 114 Ex. A; Northridge Group Inc. Home Page, http://www.northridgehazmat.com (last visited Feb. 25, 2020).

[2] ECF No. 114.

[3] For background on the core dispute and its underlying facts, reference ECF Nos. 73 and 103. This discussion focuses on Northridge's motion.

[4] ECF No. 114 Ex. A.

4. "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, correspondence, notes, telegrams, telexes, advertisements, facsimiles, e-mail, or other forms of verbal and/or communicative discourse.

The subpoena defines "Document" as follows.[6]

5. "Document" is used in the broadest sense possible and includes, without limitation, any and all written, printed, typed, electronically generated, electronically stored information ("ESI"), electronically recorded, graphic and/or photographic material of any kind now or at any time in your possession, custody, or control, including without limitation, drafts, drawings, diagrams, photographs, photocopies, charts, graphs, email attachments, email families, metadata where available, text messages, and messages from any social media platform or chat application (e.g. Skype, Microsoft Teams, WhatsApp, Facebook, LinkedIn, etc.).

The subpoena defines "All documents" as follows.[7]

6. "All documents" as used herein shall include copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings, or were sent to different individuals than were the originals, or where different for any other reason, and all drafts prepared in connection with any document. Documents should be produced in their entirety, including all attachments, appendices, exhibits, schedules or with any other affixtures.

---

[5] Subpoena at Definition 4.
[6] Subpoena at Definition 5.
[7] Subpoena at Definition 6.

The Court reproduces the offending subpoena instructions below.[8]

> 2. All documents shall be produced in word searchable form and in the manner in which they were maintained in the regular course of business.
>
> 3. Where possible, all documents and/or photographs, should be produced in native form and with their original metadata.
>
> 4. A document is deemed to be in your possession, custody or control if it is . . . (b) in the physical custody of another person and you (i) own the requested document in whole or in part; (ii) have a right by contract, law, statute or otherwise to use, inspect, examine or copy the requested document on any terms; (iii) have an understanding, whether express or implied, that you may use, inspect, examine, or copy the requested document on any terms; (iv) have, as a practical matter, been able to use, inspect, examine, or copy the requested document when you have sought to do so; or (v) are able to lawfully use, inspect, examine or copy the requested document.

Northridge has marshaled objections to a host of Plaintiffs' discovery requests. Only one of these requests is worth noting in particular; the Court reproduces it below.[9]

> 1. All documents, including communications, and attachments thereto, in your possession, custody or control mentioning, concerning, referencing or relating to the following: (a) Brian Bolus; (b) Bolus; (c) Karen Bolus; (d) Minuteman; (e) Minuteman Spill Response, Inc.; (f) Minuteman Environmental Services, Inc.; (g) Minuteman Towing, Inc.; (h) Degg H. Stark; (i) D.H. Stark Investigations; (j) Glenn Parno; (k) Anthony J. Rosini; (l) Robert Crebs; (m) Julie Hagen; (n) Michelle Troup; (o) Paul Zimmerer; (p) I-80; (q) Exit 173; (r) Interstate 80; (s) Mifflinville; (t) New Columbia; (u) Harrisburg; (v) Loganton.

---

[8] Subpoena at Instructions 2-4.

[9] Subpoena at Request 1.

## B. The Events Preceding This Motion

On November 11, 2019, Plaintiffs' counsel, Kandis Kovalsky, spoke with Northridge's counsel, Joseph Holko.[10] Holko informed Kovalsky that he was aware of Plaintiffs' subpoena.[11] The two agreed to give Northridge more time to make motions and to respond to the subpoena.[12] They also agreed to "continue further discussing limiting the scope of the" subpoena, with Kovalsky telling Holko that Plaintiffs would consider limiting sub-items (p) through (v) (above) "depending on Northridge's initial search results."[13] Holko also reports that during this November 11, 2019 conversation, he and Kovalsky agreed to limit the subpoena in some respects.[14]

On November 13, 2019, Northridge filed a Motion to Enlarge Time in Which to Move to Limit and Respond to Plaintiffs' Subpoena.[15] The Court then scheduled a telephone conference to discuss discovery disputes, including the subpoena and Northridge's November 13, 2019 motion.[16] On the day of the conference—November 25, 2019—Northridge wrote the Court and attached a

---

[10] ECF No. 122-4 at ¶ 2.

[11] *Id.* at ¶ 3.

[12] *Id.* at ¶ 4.

[13] *Id.* at ¶ 5.

[14] *See* ECF No. 133. Holko also reports that he sent Kovalsky an unspecified email on November 6, 2019, and that he sent her "a detailed follow up email" after the November 11, 2019 conversation, "without a response." *Id.*

[15] ECF No. 108.

[16] ECF No. 110.

copy of its objections to the subpoena.[17] Northridge hadn't provided Plaintiffs with these written objections beforehand.[18]

After the conference, the Court granted Northridge's November 13, 2019 motion and gave Northridge until December 2, 2019 to move to limit the subpoena and until January 17, 2020 to respond to the subpoena.[19]

On December 2, 2019, Northridge made the present motion.[20] Northridge never contacted Plaintiffs to discuss modifying their subpoena before filing the present motion.[21] Northridge did not request Plaintiffs' concurrence to the present motion before filing it.[22]

Northridge reports that it "has performed an ordinary, user, non-technical" search of its current email system" but would need to hire a vendor, KLDiscovery, "in order to more fully and completely respond to the Subpoena (including production of drafts, documents and photographs in native form and metadata)."[23] KLDiscovery estimates that such a response would cost between about $8,000 and $14,000.[24]

---

[17] ECF No. 111.
[18] ECF No. 122-4 at ¶ 8.
[19] ECF No. 113.
[20] ECF No. 114.
[21] ECF No. 122-4 at ¶ 11.
[22] ECF No. 122-4 at ¶ 12.
[23] ECF No. 114 at ¶ 12.
[24] ECF No. 114 Ex. B.

Northridge now seeks the following specific changes to the subpoena, as well as a blanket request that "the Subpoena's Definitions, Instructions, and Requests should be limited by and comply with" Federal Rule of Civil Procedure 45.[25]

1. Eliminating ESI from the definitions of the terms "Documents" and "Communications";

2. Eliminating the request for ESI from Instructions 2 and 3;

3. Modifying Instruction 4 so that it does not "require Northridge to produce documents which Northridge has a right to use, inspect, examine or copy, but may never have used, inspected, examined, or copied" and does not "require Northridge to search documents in the possession of anyone or any entity where Northridge has the 'right' to examine the document;

4. Removing "any obligation on the part of Northridge to produce ESI, trade secret or other confidential research, development, or commercial information";

5. Removing "any obligation on the part of Northridge to produce" "any 'Documents' or 'Communications' 'relating to the Plaintiffs' and/or 'relating to' the persons, entities or locations identified in Request 1";

6. Eliminating any request for "drafts," "drafts in connection with any documents," "and multiple copies of the same document sent to different individuals";

7. Eliminating any "request for documents and photographs in their native format and for metadata for each";

8. Eliminating any "request seeking the production of documents in more than one format";

9. Eliminating any "request for computer searchable documents, insofar as [Northridge] seeks to produce the documents as paper copies."

---

[25] ECF No. 114 at 1-2.

### III. DISCUSSION

#### A. Whether Northridge complied with the requirements of the Middle District of Pennsylvania's Local Rules

##### 1. Legal Standards

Middle District of Pennsylvania Local Rule 7.1 provides that any motion "shall contain a certification by counsel for the movant that he or she has sought concurrence in the motion from each party, and that it has been either given or denied." "A certificate of nonconcurrence does not eliminate the need for counsel to comply with Local Rule 26.3 relating to conferences between counsel in all discovery motions directed toward a resolution of the motion."

A related Middle District of Pennsylvania Local Rule, Local Rule 26.3 (which relates specifically to discovery motions such as Northfield's motion before the Court), provides that: "Counsel for movant in a discovery motion shall file as part of the motion a statement certifying that counsel has conferred with counsel for the opposing party in a good faith effort to resolve by agreement the issues raised by the motion without the intervention of the court, together with a detailed explanation why such agreement could not be reached. If part of the issues raised by the motion have been resolved by agreement, the statement shall specify the issues so resolved and the issues remaining unresolved."

"Local Rule 26.3 requires that the moving party certify that it made a good faith effort to resolve the discovery dispute before seeking court action."[26] Indeed, a party's failure to provide this certification before bringing a discovery motion provides the court with a freestanding reason to deny the motion.[27] As a court with a similar local rule explained, this kind of local court rule is "designed to encourage professionalism and collegiality among litigators and avoid unnecessary court intervention, protracted legal proceedings and needless expense and fees. Zealous advocacy does not excuse a 'belligerent and uncompromising approach to the discovery process.'"[28]

### 2. Analysis

I find that Northridge has not complied with Local Rule 7.1 or with Local Rule 26.3. The Court acknowledges Plaintiffs' proffered authorities that provide precedent for dismissing a discovery motion without prejudice when a movant does not comply with the above procedural strictures. However, this District has shown some leniency with litigants' non-compliance on these and related measures. Such non-compliance is certainly disfavored by this District, but it has

---

[26] *Lofton v. Wetzel*, No. 12-cv-1133, 2015 WL 5761918, at *2 (M.D. Pa. Sept. 29, 2015).

[27] *See Han Tak Lee v. Tennis*, No. 4:CV-08-1972, 2012 WL 2905384, at *3 (M.D. Pa. July 16, 2012).

[28] *Hilton-Rorar v. Sate and Federal Communications, Inc.*, Case No. 5:09–CV–01004, slip. op. at 3 (N.D. Ohio, filed Jan. 7, 2010) (*cited by Bialko v. Quaker Oats*, No. 08-cv-0364, 2010 WL 11553253, at *1 (M.D. Pa. Mar. 2, 2010) (Vanaskie, J.)).

often failed to find this non-compliance dispositive. As a consequence, courts have often failed to deny a party's motion on the basis of such non-compliance.[29]

### 3. Conclusion

Though Northridge has not complied with Local Rule 7.1 or with Local Rule 26.3, the Court will not impose the drastic remedy of denying Northridge's motion on that basis.

## B. The merits of Northridge's motion

### 1. Legal Standards

Federal Rule of Civil Procedure 45 ("Rule 45") governs the issuance of subpoenas, which a party can use to seek discovery from a non-party.[30] A party may use a subpoena to obtain "hard-copy" documents as well as ESI.[31]

Rule 45 gives certain protections to the target of a subpoena. "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps

---

[29] *See Indianapolis Life Ins. Co. v. Hentz*, No. CIV A 1:06CV2152, 2009 WL 36454, at *2 (M.D. Pa. Jan. 6, 2009) (holding that failure to seek concurrence is excusable though disfavored); *United States v. Sawyers*, No. 1:19-CR-00052, 2019 WL 6328091, at *3 (M.D. Pa. Nov. 26, 2019) (similar); *Daley v. Firetree, Ltd.*, No. 4:CV-04-2213, 2005 WL 3440486, at *1 (M.D. Pa. Dec. 14, 2005) (failing to file a Local Rule 7.1 certification was not dispositive); *Cmty. Ass'n Underwriters of Am., Inc. v. Queensboro Flooring Corp.*, No. 3:10-CV-1559, 2014 WL 1516152, at *3 (M.D. Pa. Apr. 15, 2014) ("significant technical deficiencies" in motion papers did not warrant summary dismissal); *Wallace ex rel. Wallace v. Novartis Pharm. Corp.*, 984 F. Supp. 2d 377, 388 (M.D. Pa. 2013) (court had granted party's motion "despite his repeated failure to comply with the Local Rules," including failure to follow Local Rule 7.1); *Moyer v. Berdanier*, No. 3:CV-11-1811, 2013 WL 704483, at *4 n.4 (M.D. Pa. Feb. 26, 2013) (court considering a motion despite failure to comply with Local Rule 26.3).

[30] *See* Fed. R. Civ. P. 45.

[31] Fed. R. Civ. P. 45(a)(1).

to avoid imposing undue burden or expense on a person subject to the subpoena."[32]
"On timely motion"—i.e., the motion before the Court—"the court for the district where compliance is required must quash or modify a subpoena that" "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or" "subjects a person to undue burden."[33]

### a. Undue Burden

"When analyzing whether a subpoena places an undue burden on a non-party, the court considers issues such as relevance, the requesting party's need, the breadth of the request, and the burden imposed."[34] Other relevant issues are "the time period covered" and "the particularity with which the documents are described."[35] "The party seeking to quash a subpoena bears the heavy burden of demonstrating that the requirements of Rule 45 are satisfied. . . . Specifically, the moving party must show a 'clearly defined and serious injury.'"[36]

### b. The Production of ESI, In Context of the Delineations of Discovery

"The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible

---

[32] Fed. R. Civ. P. 45(d)(1).

[33] Fed. R. Civ. P. 45(d)(3).

[34] *Diodato v. Wells Fargo Ins. Servs. USA, Inc.*, No. 1:12-CV-02454, 2013 WL 6054824, at *1 (M.D. Pa. Nov. 15, 2013).

[35] *Grider v. Keystone Health Plan Cent., Inc.*, No. CIV.A. 05-MC-40, 2005 WL 2030456, at *7 (M.D. Pa. July 28, 2005).

[36] *Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.*, No. MISC. 1:12-MC-00358, 2012 WL 5862735, at *3 (M.D. Pa. Nov. 19, 2012) (cleaned up).

because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)."[37]

Rule 26(b)(2)(C) provides that a court "must limit the frequency or extent of discovery otherwise allowed" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

Rule 26(b)(1) states the general scope of discovery that is allowed in an action. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

---

[37] Fed. R. Civ. P. 45(e)(1)(D).

## 2. Analysis

### a. The information that Plaintiffs seek in their subpoena is relevant and not available from another source.

Plaintiffs argue that their subpoena targets information "not only relevant, but critical to Plaintiffs' claims" because it gets at the alleged illegal conduct that undergirds this dispute.[38] The Court finds this argument convincing. Further, Plaintiffs have presented evidence—a letter from the target of a previous similar subpoena—that the information Plaintiffs seek in this current subpoena is not available from another source.[39] The Court finds that the information that Plaintiffs seek in their subpoena is relevant and is not available from another source.

### b. Plaintiffs' subpoena does not subject Northridge to an undue burden.

Northridge argues that the subpoena subjects it to an undue burden. The Court paraphrases Northridge's individual arguments below.

    i. Plaintiffs seek the same ESI in more than one form.[40]

    ii. The subpoena mandates that Northridge create responsive documents.[41]

    iii. The subpoena seeks multiple copies of the same document or drafts.[42]

---

[38] ECF No. 122 at 10.

[39] *See* ECF No. 122 Ex. B.

[40] ECF No. 116 at 3-4.

[41] ECF No. 116 at 4.

[42] *Id.*

    iv.    The subpoena seeks drafts "in connection with any document"; the term "in connection with" is unclear and overly broad.[43]

    v.    The subpoena's request that Northridge search for files "relating to the Plaintiffs" is vague and ambiguous.[44]

    vi.    Producing ESI in native form with original metadata, and running certain searches, would require the retention of a computer data retrieval and forensic company, at significant expense.[45]

    vii.    Forcing Northridge to search documents from every entity from which it has a "right" to examine documents poses an undue burden.[46]

    viii.    Certain search terms are too broad and not connected to the litigation.[47]

    ix.    Plaintiffs seek trade secret or other confidential research, development, or commercial information.[48]

None of these arguments are availing. With respect to (i)-(iii): as Plaintiffs explain, they do not seek the same ESI in more than one form, Northridge does not have a duty to create responsive documents, and Plaintiffs do not seek multiple copies of the same document or drafts, but rather any different versions or recipients of a document.[49] With respect to (iv): Northridge takes a selective snippet of the relevant definition. The full segment is "drafts *prepared* in connection with any document." The Court finds that this is clear.

---

[43] *Id.*

[44] ECF No. 116 at 7-8.

[45] ECF No. 116 at 5, 7.

[46] ECF No. 116 at 5-6.

[47] ECF No. 116 at 7.

[48] *See* ECF No. 116 at 7.

[49] ECF No. 122 at 12-13.

With respect to (v) and (viii), "the mere statement by a party that the discovery sought is overly broad, burdensome, oppressive, vague or irrelevant is not adequate to voice a successful objection."[50] Northridge has made only conclusory arguments about these two deficiencies, and as such, Northridge has not sustained its burden of presenting acceptable objections. My analysis for (ix) follows the same course. A party who claims privilege bears the burden of establishing that a privilege applies.[51] "[M]ere conclusory or ipse dixit assertions" do not suffice for a party to meet its burden.[52] Here, Northridge's cursory, conclusory assertions of privilege do not suffice.[53]

This leaves the above objections (vi) and (vii). For (vi): Northridge submits KLDiscovery's invoice reflecting an expense of about $8,000 to $14,000. Northridge argues that this represents an undue burden. But Northridge makes no substantive argument as to *why* this burden is inappropriate, other than stating, in a conclusory fashion, that the expense is "significant."[54] Northridge has not carried

---

[50] *Northern v. City of Philadelphia*, No. CIV. A. 98-6517, 2000 WL 355526, at *2 (E.D. Pa. Apr. 4, 2000) (*citing Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)).

[51] *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 484-85 (3d Cir. 1995).

[52] *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423 (E.D. Pa. 2001) (internal citation and quotation omitted).

[53] *Gould v. O'Neal*, No. CV 17-100 (JMV), 2019 WL 4686991, at *5–6 (D.N.J. Sept. 26, 2019) (holding that a cursory assertion of privilege by non-party subject to a subpoena was unpersuasive).

[54] *See* ECF No. 116 at 5, ("To do so, will require the retention of a computer data retrieval and forensic company at significant expense to Northridge."); 8 ("the request for ESI . . . subjects Northridge to undue burden and an expense of over $8,000").

its burden to show that this ESI is not reasonably accessible because of undue burden or cost.[55]

Finally, objection (vii). Northridge argues that this instruction poses an undue burden because it requires "not only a search of documents in [Northridge's] actual possession or possession of its attorney, but also in the possession of anyone or any entity where [Northridge] has the 'right' to examine the document."[56] The instruction in question fleshes out the definition of the term "possession, custody, or control." "Control is defined as the legal right, authority or ability to obtain documents upon demand."[57] Therefore, Northridge having to search documents in a third-party's custody—when it has a right to do so—does not pose an undue burden. (If it did, that would contradict the settled definition of "control.")

### 3. Conclusion

None of Northridge's objections are persuasive. Plaintiffs' subpoena does not impose an undue burden on Northridge.

---

[55] *See* Fed. R. Civ. P. 26(b)(2)(B); *Equal Employment Opportunity Comm'n v. FedEx Ground Package Sys., Inc.*, No. 2:15-CV-256, 2018 WL 1441426, at *4 (W.D. Pa. Mar. 21, 2018).

[56] ECF No. 116 at 6.

[57] *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991); *see also Frank Brunckhorst Co. v. Ihm*, No. MISC. 12-0217, 2012 WL 5250399, at *7 (E.D. Pa. Oct. 23, 2012); *Hussey v. Chase Manhattan Bank*, No. CIV.A. 02-7099, 2005 WL 1787458, at *1 (E.D. Pa. July 26, 2005).

## IV. CONCLUSION

The Court denies Northridge's motion. An accompanying Order reflects this denial and clarifies additional discovery obligations that lie in its wake.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge