**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRIAN J. BOLUS, *et al.*, | No. 4:15-CV-01062 |
| Plaintiffs, | (Judge Brann) |
| v. | |
| AMY CARNICELLA, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

**JULY 24, 2020**

## I.    BACKGROUND

The Pennsylvania Office of Attorney General ("OAG"), a former defendant in this action, seeks a protective order, per Federal Rule of Civil Procedure 26(c), "to maintain the confidentiality of documents provided to Plaintiffs during discovery."[1] The OAG seeks an "umbrella protective order": an order that prevents the disclosure of *any* of the documents that the OAG has already produced, unless (i) the OAG consents, or (ii) the disclosure is under seal.[2] The OAG argues that it has shown good cause for such an order by showing a substantial interest in confidentiality, as well as the parties' disagreement about

---

[1]    Doc. 128 at 1.

[2]    Doc. 128 at ¶ 28.

whether the previous confidentiality agreement in this action applies to these materials.[3]

## II. FACTS AND PROCEDURAL HISTORY[4]

In July 2018, the Court ordered the then-existing slate of Defendants in this matter to "provide Plaintiffs with a rolling production of documents, together with a privilege log," by September 28, 2018.[5]

The OAG reports that "Plaintiffs refused to execute a confidentiality agreement" that Defendants had drafted.[6] But, following the Court's order, "the Defendants—which at the time still included the OAG—began a rolling production of documents to Plaintiffs."[7]

On September 14, 2018, the Court dismissed all claims against the OAG with prejudice.[8] As discovery continued on the remaining claims, the OAG reports that Defendants' counsel renewed a request to enter into a confidentiality agreement, and "Plaintiffs' counsel persisted in refusing" to do so.[9] The OAG continued with its rolling production of material through August 2019.[10] After the

---

[3] Doc. 128 at ¶ 36.

[4] For background on the core dispute and its underlying facts, reference ECF Nos. 73 and 103. This discussion focuses on Plaintiffs' motion.

[5] Doc. 71 at ¶ 1.

[6] Doc. 128 at ¶¶ 14-15.

[7] Doc. 128 at ¶ 16.

[8] Doc. 128 at ¶ 17; Doc. 74.

[9] Doc. 128 at ¶¶ 18-19.

[10] Doc. 128 at ¶ 21.

production of over 33,000 documents, the parties agreed upon and executed a confidentiality agreement on August 8, 2019 ("the August 8 Agreement").[11]

The OAG now requests "an umbrella protective order forbidding the disclosure of any of the documents the OAG has produced in discovery," unless the disclosure occurs with the OAG's consent or under seal.[12]  Putting it another way, the OAG states that it "is merely seeking to keep non-public documents, which are treated as confidential by the [OAG] and are exempt from disclosure under [Pennsylvania's] Right to Know Law, from being placed in the public realm."[13]  This request for relief extends to "the documents Plaintiffs have attached as Exhibits D through G to their [earlier] motion to compel" and all other documents "the [OAG] will produce in the course of this litigation."[14]

The OAG states that it, "as a law enforcement agency, has a substantial interest in maintaining the confidentiality of its documents," especially internal law enforcement materials, documents related to an underlying grand jury proceeding, and documents protected under Pennsylvania's Criminal History Record

---

[11]   Doc. 128 at ¶ 23.  The August 8 Agreement is available at Doc. 128 Ex. A.

[12]   Doc. 128 at ¶ 28.

[13]   Doc. 128-2 at 9.

[14]   Doc. 128-2 at 12.

Information Act.[15] The OAG also states that the parties disagree over whether the August 8 Agreement applies to these materials.[16]

## III. DISCUSSION

### A. Federal Rule of Civil Procedure 26(c)

Federal Rule of Civil Procedure 26(c) allows "[a] party or any person from whom discovery is sought" to "move for a protective order." "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[17] "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."[18] Indeed, the requesting party must show "that disclosure would work a clearly defined and serious injury" to them, and "[t]he injury must be shown with specificity."[19]

A district court may consider the following factors, "which are neither mandatory nor exhaustive," "when determining whether good cause exists and, by extension, whether a protective order should issue."[20]

1. Whether disclosure will violate any privacy interests.

---

[15] Doc. 128 at ¶ 34.

[16] Doc. 128 at ¶ 36.

[17] Fed. R. Civ. P. 26(c).

[18] *See Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

[19] *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (cleaned up).

[20] *Id.*

2. Whether the information is being sought for a legitimate purpose or for an improper purpose.

3. Whether disclosure of the information will cause a party embarrassment.

4. Whether confidentiality is being sought over information important to public health and safety.

5. Whether the sharing of information among litigants will promote fairness and efficiency.

6. Whether a party benefitting from the order of confidentiality is a public entity or official.

7. Whether the case involves issues important to the public.

A district court "is best situated to determine what factors are relevant to" any given dispute. But a district court's analysis "should always reflect a balancing of private versus public interests." A district court "should articulate on the record findings supporting its" decision to grant or deny a protective order.[21]

When an umbrella protective order is sought, such as here, "the burden of justifying the confidentiality of each and every document sought to be covered . . . remains on the party seeking the protective order."[22] Yet it is up to "the other party" to "rais[e] the issue with respect to certain documents" that "it believe[s] to be not confidential."[23] In any event, the movant must make an initial "threshold showing . . . of good cause."[24]

---

[21] *Id.* (cleaned up).

[22] *Cipollone*, 785 F.2d at 1122.

[23] *Id.*

[24] *Id.*

### B. The OAG's arguments for a protective order

The OAG raises the following arguments for an umbrella protective order.

First, the OAG argues that disclosure without an umbrella protective order would violate its own privacy interests—its "substantial interest," "as a law enforcement agency," "in maintaining the confidentiality of its documents."[25] The OAG points to documents which (i) "are internal law enforcement materials which evidence the process by which the OAG investigates and prosecutes criminal defendants"; (ii) "relate to an underlying grand jury proceeding and are protected by the Investigating Grand Jury Act"; and/or (iii) "are protected from disclosure" by another Pennsylvania statute, "the Criminal History Record Information Act."[26]

In connection with this argument, the OAG states that disclosure of these documents without "notice or consent by the [OAG]" "could result in the violation of privacy interests and could prevent the Office of Attorney General, a law enforcement agency, from effectively investigating and prosecuting violations of the law in the future."[27] The OAG also states that "[a] government's interest in conducting thorough and confidential investigations has been found to be a ground for a protective order."[28] Finally, the OAG states that allowing the previously produced documents "to be disclosed without notice . . . or consent" would

---

[25] Doc. 128-2 at 9.

[26] *Id.*

[27] *Id.* at 10.

[28] *Id.* at 10 (citing *Cipollone*, 785 F.2d at 1114 n.10).

"destroy[] any underlying confidentiality of the document" and would "have a chilling effect on how the OAG handles future investigations and prosecutions as the disclosure of this information could result in sanctions under the Investigating Grand Jury Act or the Criminal History Record Information Act."[29] As the OAG puts it, "[i]n order to maintain the integrity of the investigative process, confidentiality must apply."[30]

Second, the OAG argues that this is "information important to the public health and safety."[31] Third, the OAG argues that it, as a public entity, should benefit from the associated prong of the protective order.[32] Fourth, the OAG argues that "the parties disagree as to the applicability of their confidentiality agreement to these materials."[33]

### C. Plaintiffs' arguments against a protective order

Plaintiffs argue that the OAG has failed to establish good cause for the Court's issuance of a protective order.[34] This argument has two principal thrusts.

First, Plaintiffs argue that the August 8 Agreement already provides a mechanism for the OAG designating documents as confidential as well as "default

---

[29] *Id.* at 11.

[30] *Id.*

[31] *Id.* at 9.

[32] *Id.* at 9-10.

[33] *Id.* at 11.

[34] Doc. 135 at 6.

confidentiality for three large groups of documents."[35] Per Plaintiffs, the August 8 Agreement itself provides the mechanism for pre-disclosure notice and consent that the OAG seeks—thus, the Court doesn't need to intervene further by ordering an umbrella protective order.[36] And, according to Plaintiffs, they are and will remain in compliance with the August 8 Agreement.[37]

Second, Plaintiffs argue that the OAG has "failed to articulate an injury that justifies the imposition of a protective order."[38] Plaintiffs suggest that the OAG has only presented a series of "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning."[39] Per Plaintiffs, "[t]hese general statements" will not do.[40]

Aside from arguing that the OAG has not established good cause, Plaintiffs argue that the OAG failed to confer in an appropriate fashion about the instant motion before the Court.[41] Per Plaintiffs, the OAG never suggested to Plaintiffs that the OAG was going to seek an umbrella protective order.[42]

---

[35] Doc. 135 at 6.
[36] Doc. 135 at 6-7.
[37] Doc. 135 at 7.
[38] *Id.*
[39] Doc. 135 at 8.
[40] *Id.*
[41] *See* Doc. 135 at 8-9.
[42] *Id.*

### D. The OAG's reply arguments in further support of a protective order

In reply, the OAG concedes that the August 8 Agreement provides a mechanism for designating documents as confidential.[43] But the OAG asserts that it was not "practical" for it to designate the "more than 36,000" documents it already produced as confidential.[44] Further, the OAG contests that it has provided enough examples of harm and did make a good faith attempt to resolve this dispute before bringing it to the Court's attention.[45]

### E. Analysis

#### 1. The OAG has shown good cause for an umbrella protective order.

I have considered the above seven factors. Taken together, these factors dictate that the OAG has shown good cause for obtaining an umbrella protective order. Here, the factor that does the most work is the first: whether disclosure of the documents in question will violate any privacy interests.

The OAG has identified that disclosure of these documents will violate certain of its privacy interests that are closely associated with its role as a law enforcement officer and its role in conducting criminal investigations. This Court, in a recent decision, held that a protective order requiring confidentiality for

---

[43] Doc. 139 at 5.

[44] *Id.*

[45] Doc. 139 at 5-10. The Court agrees with the OAG's position that it has, indeed, made a good faith attempt to resolve this dispute before seeking judicial intervention.

material associated with the United States' surveillance efforts was appropriate.[46] In making this holding, I reasoned that "[t]he public, in general, has an interest in protecting the investigatory process," and that "the public also has a more wide-reaching interest in maintaining the confidentiality of these documents that involve protecting people who provide information to investigators and protecting the integrity of the investigative process itself."[47] Further, I agreed with the Government that an umbrella protective order was appropriate, because of the "large-scale discovery" at hand and, in particular, the "large volume of evidence" that the Government requested that the protective order cover.[48]

The same broad reasoning applies in this case. The OAG has demonstrated a compelling need to protect the integrity of its investigative processes. This in turn creates a compelling case that disclosure of the documents in question without confidentiality measures would violate the OAG's privacy interests.[49]

---

[46] *See United States v. Johnson*, 191 F. Supp. 3d 363 (M.D. Pa. 2016) (Brann, J.). Though this was a criminal case, the same "good cause" factors apply. *See id.* at 368-69.

[47] *Id.* at 369-70.

[48] *Id.* at 372.

[49] *See id.* at 369-72; *McKenna v. City of Philadelphia*, No. CIV.A.98-5835, 2000 WL 1521604, at *2-*3 (E.D. Pa. Sept. 29, 2000); *Matter of Search of 1993 Jeep Grand Cherokee*, No. 96-91M, 1996 WL 768293, at *16 (D. Del. Oct. 11, 1996), *report and recommendation adopted sub nom. Matter of Search of 1993 Jeep Grand Cherokee*, 958 F. Supp. 205 (D. Del. 1996); *see generally Caver v. City of Trenton*, 192 F.R.D. 154, 163 (D.N.J. 2000); *Hunter v. Heffernan*, No. CIV. A. 94-5340, 1996 WL 426834, at *1 (E.D. Pa. July 30, 1996); *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).

The other six factors do not outweigh the first factor, and, therefore, the OAG has shown good cause.[50]

### 2. The OAG has made the requisite showing of particularized harm.

In its reply brief, the OAG describes the contents of 42 documents (all found within the exhibits attached to Plaintiffs' earlier motion to compel) and explains the harm that would result from the public disclosure of these documents.[51] Further, the OAG asserts that "nearly 70% of the documents attached as exhibits to Plaintiffs' Motion to Compel are documents that discuss matters that were occurring before the grand jury."[52] The Court finds that these descriptions and assertions constitute the requisite showing of particularized harm that a party seeking a protective order must make.

The Court notes that the OAG is seeking an umbrella protective order, as opposed to a more specific protective order. Umbrella protective orders are, as a general matter, "inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause

---

[50] Plaintiffs are seeking this information for a legitimate purpose. It is unclear whether disclosure of the information will cause a party embarrassment. Confidentiality is being sought for matters important to the safety of the public. This umbrella order will be much more efficient than having the OAG pore through thousands of already-produced documents to determine which ones merit a designation of confidentiality. The OAG, a public entity, benefits from this order. In that this case involves public safety and law enforcement, it involves issues important to the public.

[51] Doc. 139 at 7-8.

[52] Doc. 139 at 7.

with respect to any individual document."[53]  Plaintiffs can, if need be, force the OAG to discharge its burden of "justifying the confidentiality" of individual documents down the road.[54]

## IV. CONCLUSION

The Court grants the OAG's motion.  An accompanying Order follows.

                                        BY THE COURT:

                                        *s/ Matthew W. Brann*
                                        Matthew W. Brann
                                        United States District Judge

---

[53] *San Jose Mercury News, Inc. v. U.S. Dist. Court--N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999).

[54] *Cipollone*, 785 F.2d at 1122.