# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN BOLUS, *et al.*,

        Plaintiffs,

    v.

AMY CARNICELLA, *et al.*,

        Defendants.

No. 4:15-CV-01062

(Judge Brann)

## MEMORANDUM OPINION

### NOVEMBER 5, 2020

Pending before this Court is Plaintiffs'[1] Motion to Compel production of 283 documents currently in Defendants' possession.[2]  Defendants assert that the documents are protected by the work-product and deliberative-process privileges.  The Court concludes that neither privilege applies.  Accordingly, Plaintiffs' motion to compel is granted.

---

[1]  Plaintiffs include: Brian Bolus, Karen Bolus, their son Preston Bolus, and Minuteman Spill Response, Inc. (collectively "Plaintiffs").

[2]  Doc. 120.  Defendants in this case are former and current employees and officers in the Office of the Attorney General of the Commonwealth of Pennsylvania ("OAG").  They include: Amy Carnicella, David Ellis, Richard Bosco, Christopher Antonucci, Kathleen Kane, and Paul Zimmerer (collectively "Defendants").  Defendant Carnicella is a former deputy attorney general in the OAG; Defendants Ellis, Bosco, Antonucci, and Zimmerer are law-enforcement officers in the OAG.  Defendant Kane is the former Attorney General for the Commonwealth of Pennsylvania.  Doc. 40.

## I.     BACKGROUND

### A.     Litigation History

This case arises from a series of alleged constitutional and state law violations committed by Defendants while they worked in the Office of the Attorney General for the Commonwealth of Pennsylvania ("OAG").[3]  Defendants, acting as employees of the OAG, conducted a twenty-month investigation of Plaintiff Brian Bolus and his businesses (collectively referred to as "Minuteman").[4] This investigation culminated in Defendants applying for and receiving warrants to conduct several searches and seizures of Plaintiffs' personal property and business assets.[5]  These searches were executed on May 29, 2013.[6]

As a result of these seizures, Plaintiffs' personal and business bank accounts were frozen.[7]  Two grand juries returned indictments against both Plaintiffs Brian Bolus and Minuteman; Plaintiffs were collectively charged with eighty-three violations of environmental and other law.[8]  Plaintiffs' assets continued to be frozen throughout the criminal prosecution.[9]  Consequently, Minuteman was unable to continue doing business and filed for bankruptcy in April 2014.[10]  The

---

[3]   *Id.* at ¶¶ 8-16.
[4]   Doc. 40-13 at 5.
[5]   *Id.*
[6]   *Id.*
[7]   Doc. 40 at ¶¶ 74-83.
[8]   *Id.* at ¶ 157.
[9]   *Id.* at ¶¶ 74-83.
[10]  *Id.* at ¶ 83.

criminal prosecution, however, was mostly unsuccessful; eighty-one of the eighty-three counts were ultimately nolle prossed or voluntarily dismissed.[11]

Plaintiffs subsequently commenced this action in May 2015.[12]  They allege that the 2013 searches and asset freezes lacked probable cause and thus violated Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments.[13] Specifically, they claim that Defendants, through the OAG, improperly prosecuted Plaintiffs for political gain.[14]  Plaintiffs also raise several state law claims, including malicious prosecution, false arrest and detainment, assault, battery, and loss of consortium.[15]

## B.   Discovery History

Discovery began in February 2018, when Plaintiffs served their first request for production.[16]  In response to this request, Defendants produced most documents, although they withheld certain materials that they claimed were protected by various privileges.[17]  The parties were unable to resolve the matter

---

[11]   *Id.* at ¶ 157.

[12]   Doc. 1.  The Bolus Plaintiffs and Minuteman initially filed separate suits against Defendants. These actions were consolidated into the present action in May 2017.  Doc. 24.

[13]   Doc. 40.

[14]   *Id.* at ¶ 126.

[15]   *Id.*  These state law claims arise from a search executed by several Defendants on Plaintiffs' home on May 29, 2013.  *Id.* at ¶¶ 127-132.  On May 29, Defendants Bosco, Antonucci, and Ellis executed a SWAT-type raid on Plaintiffs' home.  *Id.*  Only Karen Bolus and Preston Bolus, then eight years old, were home at the time.  *Id.*  During this search, Defendants repeatedly aimed assault rifles at Plaintiffs and threatened to shoot their family dog.  *Id.*

[16]   Doc. 61-1.

[17]   Doc. 132 at 5.  Since discovery began, Defendants have released a total of 650,000 pages from 36,000 documents.  *Id.*

through informal channels and discussion.[18]  Plaintiffs now ask the Court to

compel production of 283 documents purportedly protected by the work-product

and deliberative-process privileges.[19]

### C.    Disputed Documents

The documents at issue include 205 paper and 78 electronic documents.[20]

Defendants assert the work-product privilege over 281 documents.  All of the

disputed materials relate to Defendants' and the OAG's handling of Plaintiffs'

criminal prosecution.  Some are handwritten notes, emails, internal memos, and

letters regarding the OAG's legal strategy; others include draft pleadings, draft

documents, and proffer memos.[21]

The other disputed documents, allegedly protected by the deliberative-

process privilege, are two emails sent by Deputy Attorney General Linda Hoffa

("Hoffa") to former Attorney General Kathleen Kane.[22]  These emails consist of

Hoffa "providing advice and seeking a decision regarding" two issues: (1) "the

return of various forms of property in the MinuteMan [sic] matter"; and (2) "how

the [OAG] should handle the temporary restraining order filed in the MinuteMan

[sic] matter."[23]

---

[18]  Doc. 121 at 3-4.
[19]  Doc. 120.
[20]  Doc. 121-1; Doc. 121-2.
[21]  Doc. 121-1; Doc. 121-2.
[22]  Doc. 121-7.
[23]  *Id.*

Plaintiffs maintain that neither the work-product privilege nor the deliberative-process privilege applies to any of the 283 documents.  Plaintiffs assert that the work-product privilege is inapplicable because the documents fall outside the scope of Federal Rule of Civil Procedure 26(b)(3).  In the alternative, they contend that they have satisfied both the ordinary and heightened requirements for compelling disclosure of privileged work product under Rule 26 and *Hickman v. Taylor*.[24]  Additionally, they argue that Defendants failed to meet their burden of establishing that the deliberative-process privilege applies to the two Hoffa emails.

In response, Defendants claim that Plaintiffs' motion should be denied because Plaintiffs have not made an adequate showing of relevance.  Defendants also contest the merits of Plaintiffs' motion, and argue that all 283 documents are privileged and thus shielded from discovery.

This motion is now ripe; for the following reasons, Plaintiffs' motion to compel is granted.

## II.    DISCUSSION

In the federal system, discovery is construed liberally.[25]  The purpose of this broad construction is to furnish all parties with "mutual knowledge of all the relevant facts."[26]  To this end, Rule 26 provides for discovery of all "nonprivileged

---

[24]   329 U.S. 495, 507 (1947).

[25]   *Id.*

[26]   *Id.*

matter that is relevant to any party's claim or defense."[27]  Matter need not be admissible at trial to be discoverable; discovery of any relevant material is permitted so long as the information "appears reasonably calculated to lead to the discovery of admissible evidence."[28]

But discovery is not limitless.  Parties may not needlessly prolong discovery, nor may they discover privileged information.[29]  And under the work-product doctrine, Rule 26 explicitly protects from discovery all documents "prepared in anticipation of litigation."[30]  Similarly, federal common law recognizes the deliberative-process privilege, which shields government documents that were created in anticipation of an agency decision.[31]

Importantly, however, neither of these privileges are absolute.  Thus, even if the Court determines that the privileges apply, Plaintiffs have the opportunity to show that the privileges should be overcome.  Though the party asserting a privilege bears the initial burden of establishing that the privilege applies, the party seeking discovery ultimately must demonstrate why privileged material should

---

[27]  Fed. R. Civ. P. 26(b)(1).
[28]  *Id.*
[29]  *Id.*
[30]  *Id.* at (b)(3).
[31]  *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987) (citing *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 150-54 (1975); *EPA v. Mink*, 410 U.S. 73, 89 & n. 16 (1973)).

nevertheless be produced.[32]  And in adjudicating such questions, courts are bound to construe evidentiary privileges strictly.[33]

In light of these principles, the Court makes the following determinations. First, Plaintiffs waived their relevance objection by failing to contest relevance as required by Rule 33.  Second, none of the 281 documents are protected by the work-product privilege.  Though the privilege does protect those documents drafted by a Defendant (or their agent) during Plaintiffs' criminal prosecution, Plaintiffs have sufficiently demonstrated why disclosure is appropriate.  Third, and finally, Plaintiffs have adequately shown why the two Hoffa emails should be disclosed.

### A.    Plaintiffs' Relevance Objection

Defendants waived their relevance objection under Rule 33.  Rule 33 affords parties thirty days to respond or object to written discovery requests.[34]  The rule clearly states that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."[35]  The Court notes that waiver has been applied "with particular regularity" to objections based solely on relevance.[36]

---

[32]  *In re Grand Jury (OO-2H)*, 211 F. Supp. 2d 555, 557 (M.D. Pa. 2001) (citing *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989)).

[33]  *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990) (internal citations omitted).

[34]  Fed. R. Civ. P. 33(b).

[35]  *Id.*

[36]  *Boselli v. Southeastern Pennsylvania Transp. Auth.*, 108 F.R.D. 723, 726 (E.D. Pa. 1985).

Defendants' relevance objection, which comes nearly two years after Plaintiffs' served their first request for production, is untimely.  And Defendants do not attempt to explain why good cause exists to excuse their failure to object earlier.  Accordingly, the Court finds Defendants' relevance objection waived.[37]

## B.   Work Product Privilege

The work-product privilege has two sources.  The first is Rule 26(b)(2), which protects only "documents and tangible things."[38]  Rule 26 protects material when it is "prepared in anticipation of litigation" "by or for another party or its representative."[39]  This protected work product is further divided into two categories: "ordinary" and "opinion" work product.[40]  Opinion work product, which includes any materials containing "mental impressions, conclusions, opinions, or legal theories," is entitled to greater protection than ordinary work product, which encompasses everything else.[41]

The second source of the work-product privilege is the United States Supreme Court's decision in *Hickman v Taylor*.  *Hickman* has been partially

---

[37]  Even if the objection was not waived, Defendants essentially conceded relevance by placing these documents in their privilege log.  Parties need only include materials in a privilege log that are "otherwise discoverable."  Fed. R. Civ. P. 26(b)(5).  By including these documents, Defendants thus acknowledged that they are "otherwise discoverable" (and thus relevant) but-for the asserted privileges.

[38]  *Id.* at (b)(2).

[39]  *Id.*

[40]  *Id.*

[41]  *Id.*

codified by Rule 26(b)(3),[42] but it set forth the principles upon which the work-product privilege is founded.[43]  The decision was motivated by the "'strong public policy' underlying the work-product doctrine."[44]  And *Hickman* has been used to provide greater protection than that afforded under Rule 26 alone.[45]

Under both Rule 26 and *Hickman*, opinion work product "is accorded an almost absolute protection from discovery."[46]  This is because, ordinarily, "any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases."[47]  Nevertheless, neither the Supreme Court nor the United States

---

[42]  Notably, *Hickman* provides greater protection than Rule 26(b)(3) because it protects both "tangible and intangible" work product.  329 U.S. at 511.

[43]  *See, e.g.*, *Abdell v. City of New York*, No. 05-CV-8453, 2006 WL 2664313, at *4-6 (Sept. 14, 2006) (determining whether *Hickman* provided an independent basis for precluding discovery above and beyond the protections set forth in Rule 26(b)(3)).

[44]  *Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981) (quoting *United States v. Nobles*, 422 U.S. 225, 236-40 (1975)).

[45]  Hickman has generally been used to expand protection for opinion, rather than ordinary, work product.  *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003) (acknowledging that the court has "entertained work product challenges to grand jury subpoenas even though neither [the Federal Rules of Civil Procedure] nor [the Federal Rules of Criminal Procedure] strictly applies in this context."); *e.g.*, *Upjohn*, 449 U.S. at 401-02 ("As Rule 26 and *Hickman* make clear, [opinion] work product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship."); *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985), *cert. denied*, 474 U.S. 903 (1985) (extending work-product protection to the "selection and compilation of documents" in preparation for pretrial discovery).

[46]  *Sporck*, 759 F.2d at 316 (citing *Upjohn*, 449 U.S. at 401).

[47]  *Id.* (internal citations omitted).

Court of Appeals for the Third Circuit has foreclosed the possibility that opinion work product might be disclosed under certain circumstances.[48]

Plaintiffs raise three arguments in support of their motion.  They claim that: (1) Defendants were not a "party" to the criminal proceedings brought against Plaintiffs, thus rendering the work product inapplicable to the disputed documents under Rule 26; (2) even if the work-product privilege applied, Plaintiffs have a made a showing sufficient to overcome it under Rule 26(b)(3); and (3) Plaintiffs have made a satisfactory showing that any opinion work product should be disclosed.  Defendants refute each of these contentions.

The Court concludes that all of the 281 documents allegedly protected by the work-product privilege must be produced.  The Court bases this conclusion on two grounds.  First, as to all documents created in anticipation of the *criminal prosecution*, the work-product privilege applies only to those documents created by a *party to the present litigation*.[49]  Second, Plaintiffs have established that they are entitled to discovery of both ordinary and opinion work product.  Thus, as it relates to these 281 documents, Plaintiffs' motion to compel is granted.

---

[48]   *Upjohn*, 449 U.S. at 401; *In re Cendant Corp. Securities Litigation*, 343 F.3d 658, 663-64 (3d Cir. 2003) ("[O]pinion work product protection is not absolute, but requires a heightened showing of extraordinary circumstances.") (quoting *Sporck*, 759 F.2d at 316).

[49]   Though Defendants argue that at least nine documents were created in anticipation of *this* litigation, they have failed to meet their burden of establishing that the privilege applies. Defendants provide little explanation, beyond pointing out that several documents were created after this litigation commenced, as to why these documents are protected.  Both parties are aware that the subject matter of the current suit is intertwined with Plaintiffs' criminal prosecution.  And Defendants must provide more than time stamps to establish that the work-product privilege applies.

### 1.    Applicability of the Work-Product Privilege

The work-product privilege applies only to those documents drafted by a party to the present case.[50]  As discussed above, the work-product privilege of Rule 26 protects only those documents created "by" or "for" a "party or its representative."[51]  The Supreme Court has interpreted this language to extend protection to "materials prepared for *any* litigation or trial so long as they were prepared by or for a party to the *subsequent* litigation."[52]  Thus, the work-product privilege is not limited to a particular lawsuit.  And a party may assert the privilege over documents she created as an attorney in *past* litigation, if those documents are being used against her in the *present* action.[53]

The question in this case is whether, and to what extent, documents created by the OAG in Plaintiffs' criminal prosecution are protected by the work-product privilege in subsequent civil litigation against OAG employees.  In accord with other courts that have addressed this question, the Court concludes that only those documents personally drafted by Defendants (or their agents) are protected by the work-product privilege.

---

[50]  The Court finds that all of the documents constitute work product under the two-part test, commonly used in the Third Circuit, for determining whether documents are protected by the work-product doctrine.  *Louisiana Mun. Police Employees Retirement System v. Sealed Air Corp.*, 253 F.R.D. 300, 306 (D.N.J. 2008).  This is so because the documents were created in "reasonable anticipation" of the criminal prosecution, and were prepared "primarily for the purpose of litigation."  *Id.*

[51]  Fed. R. Civ. P. 26(b)(3).

[52]  *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 25 (1983) (internal citations omitted).

[53]  *See id.* (internal citations omitted).

In *Doubleday v. Ruh*, the United States District Court for the Eastern District of California dealt with a similar question.  There, after being unsuccessfully prosecuted by the Sacramento County District Attorney's Office, the plaintiff filed a civil-rights action against the county and several individual state officers.[54] Seeking the prosecutorial file created during the criminal prosecution, the plaintiff served subpoenas on three deputy district attorneys who had worked on the prosecution but were not defendants in the action.[55]  The attorneys asserted the work-product privilege, claiming that these documents were not discoverable because they were created in anticipation of the criminal prosecution.  The issue before the Eastern District of California was whether the privilege applied under those circumstances.  More specifically, the court addressed whether the prosecutorial file was created "by" or "for" a party to the civil litigation within the meaning of Rule 26.

The Eastern District of California found the work-product privilege inapplicable.[56]  The court held that the prosecutorial file had not been created *for* either the County of Sacramento or the individual district attorneys.[57]  Rather, the court determined that only "the People of the State of California" can be considered a plaintiff in a criminal case.[58]  The *Doubleday* court reasoned that

---

[54]   149 F.R.D. 601, 604-05 (E.D. Cal. 1993).
[55]   *Id.*
[56]   *Id.* at 605.
[57]   *Id.* at 605-06.
[58]   *Id.* at 606.

neither the County of Sacramento nor the District Attorney had complete and exclusive authority to initiate a prosecution.[59]  Thus, neither could be considered a true "party" to a criminal prosecution, and neither could prevent disclosure as a party whom the file was made "for."[60]

*Doubleday* ultimately did not address whether the work-product privilege would have applied if the attorneys had been parties to the civil action, and whether the prosecutorial file would have thus constituted a document created *by* a party to the civil litigation.[61]  However, several other courts have taken up this question.  They have all concluded that the work-product privilege does apply to documents created in anticipation of a criminal prosecution where the person who drafted them is a party in subsequent civil litigation.

For example, in *Sommer v. United States*, the United States District Court of the Southern District of California distinguished *Doubleday*, holding that materials created by a party in civil litigation could assert the work-product privilege over documents that they created in a previous criminal prosecution.[62]  The United States District Courts for the District of Arizona and the District of Central

---

[59]   *Id.*
[60]   *Id.*
[61]   *Id.*  Because the subpoenaed attorneys were not formal parties to the action, the court found they lacked authority to claim the work-product privilege.  *Id.*
[62]   No. 09-cv-2093, 2011 WL 4433631, at *6 (S.D. Cal. Sept. 22, 2011).

California held similarly in *Merritt v. Arizona*,[63] and *Colonies Partners v. County of San Bernadino*, respectively.[64]

Though none of these decisions are controlling, the Court finds them persuasive. Accordingly, the Court makes two determinations. First, the disputed documents were not created "for" a party in the present litigation because neither the OAG nor its employees were a party to the criminal prosecution against Plaintiffs.[65] Second, the work-product privilege applies to any documents created in anticipation of the criminal prosecution by a party to the *present case*.[66] A literal reading of Rule 26(b)(3) reveals no exception to this rule, and the Court sees no reason to depart from its text.[67]

As a result, only those documents drafted by a named Defendant (or their agent) are protected by the work-product privilege. All other documents must be disclosed to Plaintiffs. The Court next analyzes whether Plaintiffs have

---

[63]  No. 17-cv-4540, 2018 WL 3729757, at *3 (D. Ariz. August 8, 2018).

[64]  No. 5:18-cv-0420, 2019 WL 2895187, at *9-10 (C.D. Cal. May 1, 2019).

[65]  Though the same holding in *Doubleday* was partially premised on a decision by the Supreme Court of California which addressed this question, the Court believes the reasoning underlying that determination is persuasive here. 149 F.R.D. at 605-06. *See also Carter v. City of Philadelphia*, No. 97-cv-4499, 2000 WL 632988 (E.D. Pa. May 5, 2000) (holding the same).

[66]  The Court immediately notes that several of the disputed documents were drafted by Defendant Carnicella. These documents are clearly protected by the work product privilege. However, the Court notes that some materials may have been drafted by an "agent of" a named Defendant. The Court has full faith that the parties will be able to resolve any disputes regarding the authorship of any documents not obviously covered by the privilege.

[67]  *See Grolier*, 462 U.S. at 25. Plaintiffs rely heavily on *Carter v. City of Philadelphia* for the proposition that the work-product privilege is entirely inapplicable. 2000 WL 632988. But *Carter* did not address whether the privilege applies when a party in civil litigation has previously drafted documents in a criminal prosecution. *Id.* at *1. Because *Carter* did not conduct this analysis, the Court finds it distinguishable and unpersuasive on this point.

sufficiently established that those materials protected by the work-product privilege should be disclosed.

## 2.      Overcoming the Work-Product Privilege

Plaintiffs have shown that they are entitled to discover all documents protected by the work-product privilege, whether they constitute ordinary or opinion work product.  The work-product privilege provides "two tiers of protection."[68]  First, "work prepared in anticipation of litigation by an attorney or his agent," known as ordinary work product, is "discoverable only upon a showing of need and hardship."[69]  And second, work product containing the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative," known as "core" or "opinion" work product, is "generally accorded near absolute protection from discovery" and requires a "heightened showing of extraordinary circumstances."[70]

Because certain documents in Defendants' privilege log appear to contain "mental impressions, conclusions, opinions, or legal theories," the Court analyzes whether disclosure is appropriate under both standards.

---

[68]   *Cottillion v. United Refining Co.*, 279 F.R.D. 290, 302 (W.D. Pa. 2011) (quoting *In re Cendant Sec. Litig.*, 343 F.3d at 663-64).
[69]   *Id.* (quoting *In re Cendant Sec. Litig.*, 343 F.3d at 663-64).
[70]   *Id.* (quoting *In re Cendant Sec. Litig.*, 343 F.3d at 663-64).

### a.    Ordinary Work Product

Plaintiffs have shown that they are entitled to discover any ordinary work product.  To compel discovery of ordinary work product, a party must show that the materials are otherwise discoverable and that the party: (1) has a "substantial need for the materials"; and (2) "cannot, without undue hardship, obtain their substantial equivalent by other means."[71]

Plaintiffs have satisfied both elements.  First, they have a substantial need for these materials because they are directly relevant to the present litigation.  Plaintiffs' claims turn entirely on whether Defendants wrongfully subjected them to prosecution.  To succeed, Plaintiffs will need to establish that Defendants lacked probable cause or acted maliciously.  This will likely require showing that Defendants knew their prosecution of Plaintiffs was wrongful or, at the very least, that it lacked justification.  And documents that might reveal "activity prior to and after" receiving search warrants or draft documents of grand jury presentments are especially pertinent to Plaintiffs' claims.

Second, Plaintiffs will not be able to obtain equivalent information by other means.  Plaintiffs would not likely be able to discover this information by deposition; though Rule 26 only protects "documents and tangible things," Defendants have indicated they might object to any questions regarding

---

[71]   Fed. R. Civ. P. 26(b)(3).

information contained in privileged documents.[72]  Further, Plaintiffs have

adequately demonstrated that this information is only available in the documents

currently in Defendants' possession.  Consequently, Plaintiffs have satisfied their

burden on Rule 26, and their motion to compel production of all ordinary work

product is granted.

### 3.    Opinion Work Product

Plaintiffs have also shown that they are entitled to discover any opinion

work product.  In *Upjohn*, the Supreme Court declined to determine whether

opinion work product is absolutely protected; though the Court clarified that

opinion work product cannot be disclosed under the "need and hardship" test of

Rule 26, it declined to provide a specific standard under which courts might

analyze the question.[73]  The Court did suggest, however, that "a far stronger

showing of necessity and unavailability" would be required.[74]

The Third Circuit has not directly addressed the issue, although it has held

that protection of opinion work product is "not absolute, but requires a heightened

showing of extraordinary circumstances."[75]  In the absence of controlling

---

[72]  *See* Doc. 132 at 35 (citing *Hall v. Clifton Precision, a Div. of Litton Systems, Inc.*, 150 F.R.D. 525, 529 (E.D. Pa. 1993)).

[73]  449 U.S. at 401-02.

[74]  *Id.*

[75]  *In re Cendant Corp. Securities Litig.*, 343 F.3d at 664 (citing *Sporck*, 759 F.2d at 316).  The circuits are currently split on whether opinion work product is afforded absolute or qualified protection.  The Third Circuit's approach is consistent with those of the Fifth, Sixth, Ninth, and D.C. Circuits, as well as a number of district courts, who have also held that opinion work product protection is not absolute.  *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573 (9th Cir. 1992); *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir.

precedent, the Court looks to the Ninth Circuit's test, formulated in *Holmgren v. State Farm Mutual Auto Insurance*, which squarely answers this question.[76]

There, the Ninth Circuit held that opinion work product was discoverable where: (1) "mental impressions are *at issue*" in a case; and (2) "the need for the material is compelling."[77]  In that case, the *Holmgren* court found that both elements were satisfied where the plaintiff raised raised a bad-faith insurance claim that put the "strategy, mental impressions and opinion of [the insurer's] agents" directly at issue.[78]

The Court finds the Ninth Circuit's test appropriate here, and concludes that Plaintiffs have satisfied both elements.  As discussed above, Defendants' mental impressions and legal strategy are directly at issue in this case.  And Plaintiffs have established a compelling need for this information because they will otherwise be unable to access it.  Because Defendants' legal strategies in the criminal prosecution form the heart of Plaintiffs' case, the Court finds that Plaintiffs have

---

1983); *In re Sealed Case*, 976 F.2d 793, 809-10 (D.C. Cir. 1982); *In re Grand Jury Subpoena Dated Nov. 8, 1979*, 622 F.2d 933, 935-36 (6th Cir. 1980); *Andrews v. St. Paul Re-Ins. Co. Ltd.*, No. 00-cv-0283, 2000 WL 1760638 (N.D. Okla. Nov. 29, 2000); *AIA Holdings, S.A. v. Lehman Brothers, Inc.*, No. 97-cv-4978, 2000 WL 1639417 (S.D.N.Y. Nov. 1, 2000).  In contrast, the Fourth Circuit and other district courts have found the privilege to be absolute. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 735 (4th Cir. 1974); *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 478 (N.D. Ill. 2002) ("[O]pinion work-product is protected even when undue hardship exists and therefore, is for 'all intents and purposes absolute.'").

[76]   976 F.2d.

[77]   *Id.* at 577.

[78]   *Id.* (quoting *Reavis v. Metropolitan Property and Liability Ins. Co.*, 117 F.R.D. 160, 164 (S.D. Cal. 1987)).

demonstrated a sufficiently compelling need.  The Court also finds persuasive

other cases that have addressed substantially similar facts and found the *Holmgren*

test to be satisfied.[79]

Additionally, disclosure is not inconsistent with the underlying purposes of

the work-product privilege as set forth in *Hickman*.  These three purposes are: (1)

"preserv[ing] a zone of privacy in which a lawyer can prepare and develop legal

theories and strategies 'with an eye toward litigation'"[80]; (2) preventing attorneys

from piggybacking off of the work and research conducted by their opponents[81];

and (3) preventing undue interference with litigation.[82]

Only the first purpose is implicated here.  Plaintiffs are not seeking to

piggyback off of Defendants' work in the criminal prosecution as it has long since

ceased.  Neither can Plaintiffs request interfere with inactive litigation.  The only

---

[79]  *Doubleday*, 149 F.R.D. at 608; *Colonies Partners LP*, 2019 WL 2895187, at *12 ("[I]n this case, mental impressions are at the core of [the Plaintiffs'] claims regarding retaliation and conspiracy."); *Sommer*, 2011 WL 4433631, at *7; *see also Schultz v. Talley*, 152 F.R.D. 181, 185 (W.D. Missouri* 1993) (permitting discovery of a prosecutorial file in a subsequent civil action); *Carter*, 2000 WL 632988, at *2 (citing *Doubleday* and *Schultz* as authority for disclosing opinion work product).  *C.f. Merrit v. Arizona*, 2018 WL 3729757, at *4 (holding that the plaintiff failed to satisfy the "compelling need" component where he had already deposed several law-enforcement officers and had "obtained substantial document production"); *Natural-Immunogenics Corp. v. Newport Trial Group*, No. 15-02034, 2018 WL 6168035, at *15 (C.D. Cal. June 12, 2018) (holding that simply showing that evidence was a "critical element" of the plaintiff's malicious prosecution was not enough to demonstrate "substantial need").

[80]  *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman*, 329 U.S. at 511).

[81]  *See Hickman*, 329 U.S. at 516 ("Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary.") (Jackson, J., concurring).

[82]  *Id.* at 510-11.

factor weighing against disclosure is that Plaintiffs' request might interfere with the zone of privacy generally afforded to attorneys. But this zone of privacy is generally intended to remove any fear that an attorney's work will be used against their *clients*.[83] And it would be inappropriate for this Court to defer to an attorney's zone of privacy where that privacy might be used to shield the attorney from the consequences of their wrongdoing. Consequently, Plaintiffs' motion, as it relates to the 281 documents, is granted.

## C.   Deliberative-Process Privilege

Finally, Plaintiffs have established that they are entitled to the two Hoffa emails purportedly covered by the deliberative-process privilege. The deliberative-process privilege protects "confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice."[84] "[T]he ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions."[85] "It recognizes 'that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer.'"[86]

---

[83]   *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991) (citing *Hickman*, 329 U.S. at 510-11).

[84]   *Redland Soccer Club*, 55 F.3d at 853 (quoting *In re Grand Jury*, 821 F.2d at 959).

[85]   *Id.* (quoting *NLRB v. Sears Roebuck & Co.*, 42 U.S. 132, 151 (1975)).

[86]   *Id.* (quoting *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 (D.C. Cir. 1994)).

However, "[t]he privilege, once determined to be applicable, is not absolute."[87]  The Third Circuit has adopted a two-part test for determining whether documents should be withheld under the deliberative-process privilege.  A district court thus must: (1) determine whether the privilege applies; and if so (2) balance the parties' interests.[88]  The requesting party may "overcome the claim of privilege by showing a sufficient need for the material in the context of the facts or the nature of the case . . . or by making a *prima facie* showing of misconduct."[89]

The Third Circuit has further identified five factors that a court should consider in determining the parties' balance of interests: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable."[90]

The Court concludes that the deliberative-process privilege applies, but that the balance of interests weighs in favor of Plaintiffs.[91]  As discussed above, the

---

[87]  *Id.* (citing *First Eastern Corp.*, 21 F.3d at 468 n. 5).
[88]  *Id.*
[89]  *In re Grand Jury*, 821 F.2d at 959 (internal citations omitted).
[90]  *Redland Soccer Club*, 55 F.3d at 854 (quoting *First Eastern Corp.*, 21 F.3d at 468 n. 5) (alterations in original).
[91]  *See Bayliss v. New Jersey State Police*, 622 Fed. Appx. 182, 185 (3d Cir. 2015) (nonprecedential) (concluding that review sheets created for the purpose of evaluating a police officer's job performance was "clearly pre-decisional and deliberative" and thus protected by the deliberative-process privilege).

evidence is highly relevant to Plaintiffs' claims, and it appears unlikely that Plaintiffs would be able to access similar information by other means.  Plaintiffs, alleging prosecutorial misconduct at one of the highest levels in the State of Pennsylvania, also raise extremely serious constitutional and civil rights claims.

Moreover, even though disclosure might encourage the "possibility of future timidity" of state employees, the Court believes that cases like Plaintiffs' are sufficiently rare so as to not have a significant deterrent effect.  In any event, the Court finds the risk that government employees might deliberate with less candor in the future to be significantly outweighed by the importance of allowing Plaintiffs to fairly adjudicate their claims.  As a result, Plaintiffs have shown that they are entitled to discovery of the two emails between Linda Hoffa and former Attorney General Kathleen Kane.  Their motion as to these two documents is granted.

## III.   CONCLUSION

Plaintiffs are entitled to discovery of all 283 documents at issue.  Their motion to compel is thus granted in its entirety.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

- 22 -