# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN BOLUS *et al.*,

      Plaintiffs,

    v.

AMY CARNICELLA *et al.*,

      Defendants.

No. 4:15-CV-01062

(Judge Brann)

## MEMORANDUM OPINION

### AUGUST 24, 2021

Plaintiffs Brian Bolus, Karen Bolus, Preston Bolus, and Minuteman Spill Response, Inc. ("Minuteman") initiated this action for damages under 42 U.S.C. § 1983 and Pennsylvania law.[1]  Plaintiffs allege that Defendants, all current or former employees at the Pennsylvania Office of the Attorney General ("OAG"), violated Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendment, and committed various intentional torts.  Following a lengthy period of discovery, Defendants filed two motions for summary judgment under Federal Rule of Civil Procedure 56.[2]

These motions are now ripe for disposition; for the following reasons, they are granted.

---

[1]   Doc. 1; Doc. 40.
[2]   Doc. 227; Doc. 228.

## I.   STANDARD OF REVIEW

A party may move for summary judgment where there exists no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.[3] Disputes are genuine where "evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[4]  A party contending that a fact is or cannot be genuinely disputed must support the assertion by citing to specific materials within the record, or demonstrating that the party bearing the burden of proof at trial cannot present admissible evidence establishing that fact.[5]

A factual dispute is material if it "might affect the outcome of the suit under the governing law."[6]  "Factual disputes that are irrelevant or unnecessary will not be counted."[7]  To aid courts in their analysis, Local Rule 56.1 requires the moving party to submit a statement of material facts.[8]  Rule 56.1 further requires the nonmoving party to file a "separate, short, and concise" statement responding to the facts offered by the moving party.[9]  A nonmoving party who fails to submit such a statement risks the moving party's facts being admitted in their entirety.[10]

---

[3]   Fed. R. Civ. P. 56(a); *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015).
[4]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (internal quotation marks omitted) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 31, 326 (3d Cir. 1993)).
[5]   Fed. R. Civ. P. 56(c)(1).
[6]   *Razak v. Uber Tech., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[7]   *Anderson*, 477 U.S. at 248.
[8]   L.R. 56.1; *Pinegar v. Shinseki*, 2009 WL 1324125, at *1 (M.D. Pa. May 12, 2009).
[9]   L.R. 56.1.
[10]   *E.g.*, *Conboy v. United States Small Business Admin.*, 992 F.3d 153, 156 (3d Cir. 2021).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[11]  Additionally, "with respect to an issue on which the nonmoving party bears the burden of proof, the burden on the moving party may be discharged by showing" that the non-moving party lacks evidence to support her case.[12]

In resolving a motion for summary judgment, a court must view facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[13]  And if a party fails to properly support an assertion of fact or to properly address another party's assertion of fact as required by Rule 56(c), a court may "consider the fact undisputed for purposes of the motion."[14]  As the United States Supreme Court has emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."[15]

---

[11]  *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145 (3d Cir. 2004) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).
[12]  *Id.* (internal quotation marks and citation omitted).
[13]  *Scott v. Harris*, 550 U.S. 372, 380 (2007).
[14]  Fed. R. Civ. P. 56(e).
[15]  *Scott*, 550 U.S. at 380 (alteration in original) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

## II.    PLAINTIFFS' NONCOMPLIANCE WITH LOCAL RULE 56.1

As an initial matter, Defendants ask the Court to strike Plaintiffs' responsive statements under Local Rule 56.1.  As discussed above, Rule 56.1 requires a nonmoving party to respond to a motion for summary judgment with a "separate, short, and concise" statement of material facts.  The purpose of the rule is to assist district courts by having parties organize their evidence and identify precisely what facts are in dispute.[16]  The requirement that a responsive statement be short and concise "is particularly important where, as here, a voluminous record and lengthy briefs accompany the motion."[17]

Defendants contend that Plaintiffs' responsive statements violate Rule 56.1 because they are voluminous, non-responsive, and riddled with irrelevant and extrinsic facts.[18]  Defendants further complain that Plaintiffs have used their responsive statements as a backdoor to introduce legal arguments that are properly confined to briefing.  Defendants ask the Court to strike Plaintiffs' statements, or, at the very least, to disregard any extrinsic facts and legal arguments therein.

Given the particular egregiousness of Plaintiffs' noncompliance, a sanction under Rule 56.1 is appropriate.  Examples from Plaintiffs' statements include:

---

[16]  *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018); *Pinegar v. Shinseki*, 2009 WL 1324125, at *1 (M.D. Pa. May 12, 2009) (Conner, J.).

[17]  *DeGroat v. DeFebo*, 87 F. Supp. 3d 706, 716 (M.D. Pa. 2015) (citing *Park v. Veasie*, 2011 WL 1831708, at *4 (M.D. Pa. May 11, 2011)).

[18]  To be more precise, Defendants describe one of Plaintiffs' statements as "[a]n incoherent, rambling, and misleading diatribe of unsupported allegations, bald speculation, and legal arguments."  Doc. 256 at 3.

attaching and referencing irrelevant materials in response to ultimately undisputed facts,[19] denying facts for the sole purpose of offering supplemental legal arguments,[20] and writing thirty-seven pages in response to *ten sentences*.[21]  Also of note is Plaintiffs' page-count, which is nearly three times longer than that provided by Defendants.[22]  In sum, Plaintiffs' statements are "neither short nor concise, nor limited to material facts," and are thus of virtually no use to the Court.[23]

It is firmly established that a district court "has the authority to strike filings that fail to comply with its local rules."[24]  Plaintiffs provide a clear example of when this authority should be exercised.  Accordingly, Plaintiffs' non-responsive answers shall be stricken, with Defendants' corresponding paragraphs being

---

[19]  *E.g.*, Doc. 238 at ¶ 8 (citing to Minuteman's bankruptcy proceedings in response to Defendants' statement that the execution of a search warrant resulted in the seizure of Plaintiffs' bank accounts), ¶ 15 (referring to purportedly false statements made by a witness in response to Defendants' statement that criminal charges were filed against Bolus), ¶ 46 (same in response to Defendants' statement that Carnicella withdrew six counts initially brought against Bolus); Doc. 242 at ¶ 9(b), ¶ 19 (attaching, for some reason, an article referring to Plaintiffs' business as an "American Success Story"), ¶ 21, ¶ 34.

[20]  *E.g.*, Doc. 238 at ¶ 6 (disputing and responding to Defendants' assertion that "[t]he search warrants were issued under the authority of Judge Krumenacker" with a three-page argument as to why the warrants, which Plaintiffs acknowledge were *issued by Judge Krumenacker*, were legally invalid), ¶ 15 (disputing that the charges filed against Bolus were lawful without contesting that they were actually filed), ¶ 35 (disputing the statement that "Carnicella was assigned as one of the prosecutors in the [Minuteman] case with Bosco assigned as the agent" with a three-page response contending that Defendants' violated the Constitution); Doc. 242 at ¶ 20(a), ¶ 21, ¶ 29(b)(i).

[21]  Doc. 238 at ¶ 4 (three pages), ¶ 6 (three pages), ¶ 8 (three pages), ¶ 15 (five pages), ¶ 21 (three pages); Doc. 242 at ¶ 20(b) (eight pages), ¶ 26 (three pages), ¶ 27(c)(ii) (three pages), ¶ 29(b)(i) (three pages), ¶ 34 (three pages).

[22]  Defendants' statements are, collectively, thirty-four pages.   Doc. 231-9; Doc. 246-13. Plaintiffs' are ninety-five.  Doc. 238; Doc. 242.

[23]  *DeGroat*, 87 F. Supp. 3d at 716.

[24]  *Weitzner*, 909 F.3d at 614.

admitted.  Any extrinsic materials proffered to supplement, but not dispute, a particular fact shall be disregarded.  Finally, any legal arguments within Plaintiffs' statements shall be stricken and ignored.

## III.  UNDISPUTED FACTS

### A.  The Plaintiffs

Plaintiffs can be divided into two categories.  The first consists of members of the Bolus family: Brian Bolus, his wife Karen Bolus, and their son Preston Bolus.  The second is Minuteman, Brian Bolus's now-defunct business.[25]  After entering into bankruptcy proceedings, Minuteman initiated an action against Defendants under § 1983.[26]  Minuteman later assigned its claims to Brian Bolus in June 2016.[27]

### B.  The Office of the Attorney General

The OAG consists of three bureaus, the Bureau of Criminal Investigations ("BCI"), the Bureau of Narcotics Investigations ("BNI"), and the Bureau of Investigative Services ("BIS").[28]  When Kathleen Kane took office as Attorney General of Pennsylvania in January 2013, she selected three people to serve over each bureau as a "special agent in charge."[29]  During Kane's tenure, the special agents in charge of the BCI and BIS, respectively, were Kevin Wevodau and Dave

---

[25]  *Minuteman Spill Response, Inc.*, No. 4:14-BK-01825, Doc. 1090 at 14 (Bankr. M.D. Pa.).
[26]  Doc. 246-13 at ¶ 39; Doc. 242 at ¶ 39.
[27]  Doc. 246-43 at ¶ 43; Doc. 242 at ¶ 43.
[28]  Doc. 231-6 at 8:12-16; Doc. 246-5 at 8:13-15.
[29]  Doc. 246-3 at 11:14-18.

Pfeiffer.[30]  Defendant David Ellis served as the head of the BCI prior to Kane

taking office.[31]  After being replaced by Wevodau, Ellis worked as a regional

director in the BNI.[32]

Within the BCI is the Environmental Crimes Section.[33]  At all relevant

times, Defendant Amy Carnicella served as a deputy attorney general in the

section.[34]  Defendant Paul Zimmerer worked as a senior supervisory special

agent.[35]  He supervised Defendant Richard Bosco, a special agent.[36]  Defendant

Christopher Antonucci worked in the BNI as a special agent under Ellis after Ellis

was replaced as head of the BCI and began serving as a regional director.[37]

### C.   The Investigation and May 2013 Seizures

In August 2011, Zimmerer received a complaint that Brian Bolus and

Minuteman were illegally disposing of solid waste, falsifying public records, and

fraudulently billing companies for services.[38]  The matter was then referred to the

Environmental Crimes Section, which opened an investigation.[39]  Carnicella and

---

[30] Doc. 231-6 at 46:19-22; Doc. 246-3 at 11:18-20; Doc. 246-5 at 7:10-12.

[31] Doc. 231-6 at 8:3-8.

[32] *Id.* at 7:13-17.

[33] Doc. 231-8 at 12:5.  The Environmental Crimes Section has since been retitled to the Environmental Crimes Unit.  Doc. 246-3 at 8:19:20.

[34] Doc. 246-3 at 9:5-7, 13:4; Doc. 247-50 at 11:9-10.

[35] Doc. 247-44 at 9:13-14.

[36] *Id.* at 10:6, 41:6.

[37] Doc. 248-56 at 6:6-7, 18:22-23.

[38] Doc. 231-9 at ¶ 1; Doc. 246-13 at ¶ 13.  The Court strikes Plaintiffs' responses to these paragraphs as they do not meaningfully dispute this fact and introduce irrelevant evidence regarding the motive and background of the individual making the complaint.

[39] Doc. 231-9 at ¶¶ 2-3.  The Court strikes Plaintiffs' response to paragraph 2 for the same reasons it struck the previous responses regarding the initial complaint against Minuteman and Bolus.

Bosco were then assigned to the investigation as the prosecutor and agent, respectively.[40]

Following discussions between Carnicella and other agents, Carnicella sent a one-page "investigative plan" at the end of August to her supervisor, Glen Parno.[41] Zimmerer and Bosco were copied on the email.[42]  The plan lists seven "leads" to be performed in the initial stage of the investigation.[43]  This includes, among other things, interviewing the complainant, obtaining relevant documents and lab results from the Department of Environmental Protection ("DEP"), and requesting Minuteman's corporate information.[44]  Carnicella testified at her deposition that her job did not involving pursuing these types of leads.[45]

The investigation began and was submitted to the then-empaneled Thirty-Fourth Statewide Investigating Grand Jury in January 2012.[46]  At some point before May 2013, Bosco and other agents interviewed approximately thirty current and former Minuteman employees, as well as several employees of state regulatory

---

[40]  Doc. 246-3 at 87:18-20; Doc. 231-9 at ¶ 35; Doc. 246-13 at ¶ 17.  The Court strikes Plaintiffs' responses to these paragraphs because they do not meaningfully dispute this fact and instead introduce legal arguments as to the investigation's constitutionality.

[41]  Doc. 246-13 at ¶ 18; Doc. 242 at ¶ 18; Doc. 247-34.

[42]  Doc. 247-34.

[43]  *Id.*

[44]  *Id.*

[45]  Doc. 246-7 at 17:12-14.

[46]  Doc. 231-9 at ¶ 3; Doc. 238 at ¶ 3; Doc. 246-13 at ¶ 22; Doc. 242 at ¶ 22.

entities.[47]  Bosco also conducted investigatory digs of three accident sites in

coordination with the DEP.[48]

On May 28, 2013, Bosco and Antonucci presented six applications for

search warrants (four of which, A, B, C, and F, are relevant here) to the

supervising judge of the grand jury.[49]  All four were supported by the same

affidavit of probable cause.[50]  The four warrants provide as follows:

- Warrant A sought to search the offices of non-party Minuteman
  Environmental Services, Inc. ("Minuteman Environmental") in
  Milton, Pennsylvania[51];

- Warrant B sought to search the offices of Minuteman Environmental
  in Middletown, Pennsylvania[52];

- Warrant C sought to search the Bolus-family residence in Lewisburg,
  Pennsylvania[53]; and

- Warrant F sought to search the offices of non-party M&T Bank.[54]

All warrant applications were approved, and the warrants were executed the

next day.[55]  The search of the Bolus residence was conducted by a special

---

[47] Doc. 321-2 at ¶¶ 11-13; Doc. 231-9 at ¶ 4; Doc. 246-13 at ¶ 24.  The Court strikes Plaintiffs'
responses to these paragraphs because they do not meaningfully dispute this fact and introduce
irrelevant evidence to supplement Defendants' statements.

[48] Doc. 321-2 at ¶ 14; Doc. 231-9 at ¶ 4; Doc. 246-13 at ¶ 24.  As discussed above, Plaintiffs'
responses to these paragraphs are stricken.

[49] Doc. 248-1.  Antonucci only became formally involved in the investigation on May 28, 2013,
when he was directed to sign the search warrants before the supervising judge.  Doc. 248-56
at 21:7-8.

[50] Doc. 246-13 at ¶ 25; Doc. 242 at ¶ 25.

[51] Doc. 248-20; Doc. 246-13 at ¶ 25(a); Doc. 242 at ¶ 25(a).

[52] Doc. 248-21; Doc. 246-13 at ¶ 25(d); Doc. 242 at ¶ 25(d).

[53] Doc. 248-22; Doc. 246-13 at ¶ 25(e); Doc. 242 at ¶ 25(d).

[54] Doc. 248-23; Doc. 246-13 at ¶ 25(f); Doc. 242 at ¶ 25(f).

[55] Doc. 246-13 at ¶¶ 26-27; Doc. 242 at ¶¶ 26-27.

operations group ("SOG") (essentially a swat team).[56]  Of the named Defendants, only Ellis was present.[57]  Ellis had not previously been involved in the investigation, but was briefed prior to the search and was the highest-ranking OAG agent on the scene.[58]  Ellis was informed during briefing that a SOG would be used.[59]  He did not question the decision, nor did he suggest that a SOG should not have conducted the search.[60]

Ellis was outside in the driveway speaking with Brian Bolus when the initial sweep of the home was being conducted.[61]  During this sweep, both Karen and Preston Bolus were detained.[62]  At some point, and for some period of time, members of the SOG pointed guns at then eight-year-old Preston, and held a gun to Karen's head as she was handcuffed.[63]  While it is not clear how long the sweep took, it had concluded by the time Ellis finished speaking with Brian Bolus outside.[64]

---

[56]  Doc. 231-6 at 58:19-59:1.

[57]  Doc. 231-9 at ¶ 27.  The Court strikes Plaintiffs' response to this paragraph because it does not meaningfully dispute this fact and lacks a citation to the record.

[58]  Doc. 231-6 at 49:2-3, 50:8-17.

[59]  *Id.* at 60:16.

[60]  *Id.* at 60:19-20, 51:4-6.

[61]  *Id.* at 82:19-83:1, 84:3-8; Doc. 231-9 at ¶ 29.  The Court strikes Plaintiffs' response to this paragraph because it does not meaningfully dispute this fact and instead introduces legal argument regarding the constitutionality of the seizures.

[62]  Doc. 248-66 at 13:5-12.

[63]  *Id.* at 8:14-23.

[64]  *See* Doc. 231-6 at 84:5-8, 94:2-4; Doc. 246-11 at 78:24-79:3 ("[Ellis] wouldn't let me to go to the house 'cause I was going to see what was—what was happening to my family, unbeknown to me, that what they had done to my wife and my son.").

Zimmerer supervised the execution of Warrant A.[65]  Bosco and approximately two dozen agents, some from the Internal Revenue Service, were present.[66]  A large number of documents were seized from the Bolus residence and the Milton property, including Plaintiffs' tax returns, passports, birth certificates, and insurance policies.[67]  Other items seized included documents related to Minuteman's business such as vehicle renewals, payroll, and invoices.[68]  A significant amount of money in Plaintiffs' M&T Bank accounts, both personal and business-related, were also frozen.[69]

Plaintiffs then filed a motion to release and return their assets under Pennsylvania Rule of Criminal Procedure 588.[70]  Following negotiations between Plaintiffs, Carnicella, and non-party prosecutor Robert Stewart III,[71] the supervising judge entered an order releasing certain funds to Minuteman for business purposes.[72]  However, the order additionally enjoined Plaintiffs from selling various property, including real estate and a number of vehicles.[73]  The

---

[65]  Doc. 248-59 at 78:14.

[66]  *Id.* at 78:15-17.

[67]  Doc. 246-11 at 103:22-25; *see* Doc. 231-6 at 81:2-7, 105:6-16.

[68]  Doc. 231-3 at 23.

[69]  Doc. 246-13 at ¶ 27(d)(vii); Doc. 242 at ¶ 27(d)(vii).  The parties dispute the total amount of money seized, but this dispute is not material.

[70]  Doc. 231-9 at ¶ 10; Doc. 238 at ¶ 10; Doc. 246-13 at ¶ 33; Doc. 242 at ¶ 33.

[71]  Stewart, now-deceased, was previously named as a defendant in this case.  *See generally Bolus v. Carnicella*, 2020 WL 6203056 (M.D. Pa. Oct. 22, 2020) (denying Plaintiffs' motion to amend their complaint to substitute Stewart's estate as a defendant).

[72]  Doc. 231-3 at 1-5.

[73]  *Id.*

OAG's argument for retaining their assets was to cover Plaintiffs' potential liability as a result of their criminal cases.[74]

### D.    The Criminal Proceedings

On May 22, 2014, after hearing testimony from Bolus and other witnesses, the Thirty-Sixth Grand Jury issued a presentment recommending criminal proceedings against Minuteman and Bolus.[75]   Non-party OAG prosecutors subsequently filed four criminal complaints against Bolus and three of his companies (including Minuteman).[76]   The complaints charged Bolus and his companies with 115 counts for eleven offenses.[77]   Separately, the federal government charged Bolus with a sole count of tax evasion in violation of 26 U.S.C. § 7201.[78]

The eleven state offenses fall within three categories:

- Environmental offenses, including violations of Pennsylvania's Clean Streams Law[79] and Solid Waste Management Act[80];

- Theft offenses arising from alleged overbilling, including racketeering,[81] theft by unlawful taking,[82] receiving stolen property,[83]

---

[74]   Doc. 247-14 at ¶ 14.

[75]   Doc. 231-9 at ¶ 13.  The Court strikes Plaintiffs' response to this paragraph because it does not meaningfully dispute this fact and instead offers irrelevant extrinsic evidence.

[76]   Doc. 266; Doc. 267.   The other companies charged were Minuteman Environmental, and Minuteman Towing, Inc.  Doc. 266 at ¶ 34; Doc. 267 at 6-9, 13-15.

[77]   Doc. 266; Doc. 267.

[78]   Doc. 266 at ¶¶ 19-22.

[79]   35 P.S. § 691.611.

[80]   35 P.S. § 6018.610(1), (4).

[81]   18 Pa. C.S.A. § 911(b)(3).

[82]   18 Pa. C.S.A. § 3921(a).

[83]   18 Pa. C.S.A. § 3925.

deceptive or fraudulent business practices,[84] and unlawful use of a computer[85]; and

- Insurance-related offenses, including racketeering,[86] dealing in proceeds of unlawful activities,[87] theft by deception,[88] criminal use of a communication facility,[89] and insurance fraud.[90]

Carnicella withdrew several environmental offenses prior to a preliminary hearing.[91]  The judge presiding over one hearing dismissed the racketeering and criminal use of a communication facility charges for lack of supporting evidence.[92]  The judge also dismissed a number of duplicative counts.[93]  The remaining counts were held over for court.[94]

In September 2016, the OAG moved for *nolle prosequi* on all charges arising from the alleged insurance fraud for lack of evidence.[95]  All other counts except one were ultimately dismissed as part of a plea agreement.[96]  Under the agreement, one of Bolus's non-party companies pled guilty to a sole count of violating the Solid Waste Management Act.[97]  The company agreed to enter into an Accelerated Rehabilitative Disposition ("ARD") program in exchange for all other

---

[84]   18 Pa. C.S.A. § 4107(a)(6).
[85]   18 Pa. C.S.A. § 7611(a).
[86]   18 Pa. C.S.A. § 911(b)(3)-(4).
[87]   18 Pa. C.S.A. § 5111(a)(1).
[88]   18 Pa. C.S.A. § 3922(a)(1)-(3).
[89]   18 Pa. C.S.A. § 7512(a).
[90]   18 Pa. C.S.A. § 4117(a)(2)-(3), (a)(5), (b)(4).
[91]   Doc. 266 at ¶¶ 15, 37; Doc. 267.
[92]   Doc. 267-1 at 179:12-180:8.
[93]   *Id.* at 179:3-11.
[94]   *Id.* at 179:16-18, 180:9-12.
[95]   Doc. 267 at 2, 6; Doc. 267-2.
[96]   Doc. 266 at ¶¶ 17, 39-40.
[97]   *Id.*

charges against Bolus and Minuteman being dropped.[98]   In 2018, Bolus pled guilty to the federal tax-evasion charge.[99]

## IV.   THE SCOPE OF DEFENDANTS' MOTIONS

Before reaching the merits, the Court must resolve an issue regarding the scope of Defendants' motions.  Defendants filed two motions for summary judgment: one aimed at Minuteman's claims,[100] and the other at the claims of the Bolus family.[101]  The Court ordinarily would treat these motions separately as raising distinct issues.[102]  This is especially true where, as here, the moving parties expressly disclaim the extension of their motion to issues or parties not raised.[103]  However, such a result is not possible in the present matter because Plaintiffs assert several identical claims.

To resolve the same claims differently based on which party raised them, and which arguments Defendants asserted against each party, would create an inefficient and incongruous result.  It would, for example, obligate the Court to hold that Minuteman's due-process claim is barred by res judicata while the exact

---

[98]   Doc. 248-42 at ¶ 14.

[99]   *See generally* Doc. 256-1.

[100]   Doc. 227.

[101]   Doc. 228.

[102]   *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir. 1989) ("When a party moves for summary judgment on ground A, his opponent is not required to respond to ground B—a ground the movant might have presented but did not), *superseded by statute on other grounds as stated by Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013).

[103]   *See* Doc. 246 at 1 ("While many of the arguments set forth herein would be equally dispositive of the Bolus family's claims, this brief is directed to the 'Minuteman' claims as hereafter described.").

same claim raised by Brian Bolus is not.  Moreover, it would require the Court to

needlessly expend its resources duplicating analysis and drawing distinctions

without a difference.[104]

One way the Court can avoid this situation is to invoke its authority to enter

summary judgment *sua sponte* under Rule 56(f).  Rule 56(f) states that, "[a]fter

giving notice and a reasonable time to respond," a court may grant summary

judgment for a nonmovant, grant a motion "on grounds not raised by a party," or

"consider summary judgment on its own after identifying for the parties the

material facts that may not be genuinely in dispute."[105]  The touchstone of Rule

56(f) is notice.[106]  Notice is satisfied where the nonmovant "had reason to believe

the court might reach the issue and received a fair opportunity to put its best foot

forward."[107]

The Court finds it appropriate to enter summary judgment on grounds not

asserted against all Plaintiffs because notice has been given.  Defendants' motions

informed Plaintiffs of the issues to be resolved.  Whether or not Plaintiffs knew

---

[104] The end result would be particularly bizarre in regard to the Court's merit analysis given that each motion raises different theories.

[105] Fed. R. Civ. P. 56(f).

[106] *See Celotex*, 477 U.S. at 326 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.").

[107] *Couden v. Duffy*, 446 F.3d 483, 500 (3d Cir. 2006) (internal quotation marks and citations omitted), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 808 (2009).  Though this statement of law predates subsection (f), the Committee Notes indicate that subsection (f) was passed to codify preexisting practices regarding sua sponte entries of summary judgment, not replace them.  Fed. R. Civ. P. 56 cmt.

that the issues raised in both motions could extend to all Plaintiffs, they had notice

of the legal issues to which they needed to present evidence.  Plaintiffs were also

given an adequate opportunity to respond to these issues via the ordinary course of

motions practice.  Accordingly, where Defendants are entitled to summary

judgment on grounds that were not raised against but apply equally to all Plaintiffs,

the Court shall enter summary judgment pursuant to its authority under Rule

56(f).[108]

## V.      PLAINTIFFS' CLAIMS

Plaintiffs assert constitutional and state-law claims arising from the searches

and seizures of Plaintiffs' property and from the prosecution of Brian Bolus and

Minuteman.  Plaintiffs raise various Fourth Amendment claims, as well as

procedural and substantive due-process claims under the Fourteenth

---

[108] Even if notice were not satisfied, the circumstances of this case would warrant a *sua sponte* entry of summary judgment.  In *Gibson v. Mayor & Council of City of Wilmington*, the Third Circuit held that notice is not required where:  (1) there exists a fully developed record; (2) the parties face no prejudice; and (3) the decision is based on a purely legal issue.  355 F.3d 215, 223-24 (3d Cir. 2004).  The Third Circuit has indicated that these three conditions, while sufficient, may not all be necessary to fall within the exception.  *Id.* at 224; *see DL Resources, Inc. v. FirstEnergy Sols. Corp.*, 506 F.3d 209, 224 & n.14 (3d Cir. 2007).  As the record is fully developed and Plaintiffs have had a full and fair opportunity to address all legal issues, the sole arguable deficiency is that the Court's decision is based on questions of mixed law and fact, not questions of pure law.  *Compare U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018) (holding that the appropriate standard of review for mixed questions of law and fact is based on whether it requires primarily legal or factual analysis), *with United States v. Gaudin*, 515 U.S. 506, 512 (1995) (noting that mixed questions of law and fact are generally resolved by juries).  Nevertheless, the Court places more weight on the first two elements and finds that the present conditions satisfy the exception set forth in *Gibson*.

Amendment.[109]  Plaintiffs also bring state claims for malicious prosecution, false

arrest and detainment, assault, and battery.[110]

## VI.    JURISDICTION

### A.    Standing

Defendants first seek dismissal of Minuteman's § 1983 claims for lack of

standing.  To satisfy the case-or-controversy requirement of Article III, a plaintiff

must establish standing.[111]  There are three components of standing: (1) injury; (2)

causation; and (3) redressability.[112]  Defendants contest standing solely under the

first element.  To show injury, Plaintiffs must demonstrate "the invasion of a

concrete and particularized legally protected interest resulting in harm that is actual

or imminent, not conjectural or hypothetical."[113]

Defendants argue that Brian Bolus lacks standing to assert Minuteman's

§ 1983 claims because such claims are unassignable under Pennsylvania law.  As

Bolus was not validly assigned these claims, Defendants contend that he has no

legally cognizable interest in their prosecution.  Bolus responds that Defendants

---

[109]  Plaintiffs waived their takings and due-process claims under the Fifth Amendment by failing to respond to Defendants' briefing on these issues.  *Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003) (granting a motion for summary judgment on two counts where the nonmovant failed to respond to the movant's arguments), *aff'd*, 136 Fed. Appx. 551 (3d Cir. 2005).

[110]  Like they did with their Fifth Amendment Claims, Plaintiffs waived their state-law claims for loss of consortium.  *Id.*

[111]  *Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n*, 894 F.3d 509, 524 (3d Cir. 2018).

[112]  *Finkelman v. Nat'l Football League*, 877 F.3d 504, 510 (3d Cir. 2017).

[113]  *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (internal quotation marks and citations omitted).

should be judicially estopped from challenging the validity of the assignment, and, alternatively, that the assignment was permitted under state law. Neither of Plaintiffs' arguments are persuasive.

Judicial estoppel is unwarranted because its application would create subject-matter jurisdiction. It is beyond question that judicial estoppel cannot expand federal jurisdiction beyond that provided for by the Constitution.[114] While Plaintiffs are not attempting to stop Defendants from contesting standing, they do seek to bar Defendants from challenging a crucial jurisdictional fact: whether Minuteman's claims were properly assigned. To apply judicial estoppel in these circumstances would allow the Court to hear a case to which it might not otherwise be authorized under Article III.[115] This would impermissibly enlarge the Court's jurisdiction and is therefore inappropriate.[116]

That said, the Court next concludes that Minuteman's claims were not validly assigned and that Bolus lacks standing to raise them now. Pennsylvania law does not allow assignment of tort claims because such claims involve rights which are "personal to the individual."[117] Section 1983 claims, arising from a

---

[114] *Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 162 (3d Cir. 2013).

[115] *See Creaciones Con Idea, S.A. de C.V. v. Mashreqbank P.S.C.*, 232 F.3d 79, 82 (2d Cir. 2000); *see also In re Sw. Bell Tel. Co.*, 535 F.2d 859, 861 (5th Cir. 1976) ("Judicial estoppel principles cannot conclusively establish jurisdictional facts."), *aff'd en banc*, 542 F.2d 297 (5th Cir. 1976), *rev'd on other grounds*, *Gravitt v. Sw. Bell Tel. Co.*, 430 U.S. 723 (1977).

[116] The Court also notes its "continuing obligation" to confirm the presence of subject matter jurisdiction in a given case. *Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245, 252 (3d Cir. 2017) (internal quotation marks and citations omitted).

[117] *Hedlund Mfg. Co., Inc. v. Weiser, Stapler & Spivak*, 539 A.2d 357, 359 (Pa. 1988); *accord. Allstate Prop. & Cas. Ins. Co. v. Wolfe*, 105 A.3d 1181, 1183 (Pa. 2014); *Sensenig v. Pa. R.R.*

"species of tort liability,"[118] allow individuals to redress inherently personal harms to their constitutional rights.  Such claims sound in tort and are thus unassignable under Pennsylvania law.  Accordingly, Minuteman's claims are dismissed.[119]

### B.    *Rooker-Feldman*

Defendants also assert that the Court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine.  Arising from 28 U.S.C. § 1257, which vests the Supreme Court with exclusive appellate authority over state-court judgments, the *Rooker-Feldman* doctrine bars the lower federal courts from entertaining appeals of state-court determinations.[120]  *Rooker-Feldman* applies in limited circumstances to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[121]

For *Rooker-Feldman* to apply, four criteria must be met:  "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complains of injuries caused by the

---

[118] *Co.*, 78 A. 91, 91-92 (1910); *Patten v. Wilson*, 34 Pa. 299, 299 (1859); *Shoemaker v. Keely*, 2 U.S. 213, 214 (Pa. 1793).

[118] *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1956 (2018) (Thomas, J., dissenting) (internal quotation marks omitted) (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305 (1986)).

[119] In general, dismissal for lack of standing is without prejudice.  *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 896 (3d Cir. 2020) ("Dismissal for lack of standing reflects a lack of jurisdiction, so dismissal . . . should have been without prejudice.").  However, because amendment would be futile, the Court dismisses Plaintiffs' claims with prejudice.  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  For purposes of analyzing futility, the Court assumes for the remainder of this opinion that Bolus has standing to assert Minuteman's claims.

[120] *Lance v. Dennis*, 546 U.S. 459, 463 (2006).

[121] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments."[122]  Prongs two and four are the "key requirements,"[123] although all are necessary to trigger the doctrine's application.[124]  To satisfy the second prong, a plaintiff must show that her injuries were caused by the state-court judgment and were "not simply ratified, acquiesced in, or left unpunished by it."[125] This prong is met where, for example, a plaintiff claims that a state court's determination itself caused constitutional harm.[126]

Defendants maintain that *Rooker-Feldman* applies to Plaintiffs' claims challenging the June 2013 orders.  Plaintiffs assert a Fourth Amendment claim accusing Defendants of convincing the supervising judge to improperly retain Plaintiffs' assets and property without probable cause.  Plaintiffs further contend that the state-court proceedings were insufficient to satisfy the requirements of procedural due process.

None of Plaintiffs' claims are barred by *Rooker-Feldman*.  The first, third, and fourth prongs are satisfied, however, Defendants fall short on the second. While Plaintiffs contest the legitimacy of the June 2013 orders, they focus solely

---

[122] *Vuyanich v. Smithton Borough*, 5 F.4th 379, 385 (3d Cir. 2021) (internal quotation marks and citations omitted).

[123] *Great W. Mining & Min. Co. v. Fox Rothschild L.L.P.*, 615 F.3d 159, 168 (3d Cir. 2010).

[124] *Vuyanich*, 5 F.4th at 385.

[125] *Great W.*, 615 F.3d at 167 (internal quotation marks and citations omitted).

[126] *Id.* at 166-67 (citing *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005)).

on Defendants' conduct in securing them.  They do this by, for example,

complaining of Carnicella's and Kane's participation in the state-court proceedings

without challenging the supervising judge's role or determination.  Because such

complaints do not implicate injuries caused by a state-court judgment, they cannot

satisfy the second requirement of *Rooker-Feldman*.  Accordingly, *Rooker-Feldman*

does not apply.

## VII.   AFFIRMATIVE DEFENSES[127]

### A.    *Heck v. Humphrey*

Under *Heck v. Humphrey*,[128] to recover damages under § 1983 for an

unconstitutional conviction or imprisonment or "for other harm caused by actions

whose unlawfulness would render a conviction or sentence invalid," a plaintiff

must first prove that his case terminated favorably.[129]  This "favorable-termination

requirement" applies "whenever 'a judgment in favor of the plaintiff would

---

[127] The Court formally addresses only three of Defendants' five affirmative defenses because the remaining two are Minuteman-specific and otherwise inapplicable.  Judicial estoppel is unavailable as Defendants cannot show how Minuteman adopted "irreconcilably inconsistent positions" on any of its claims.  *MD Mall Assocs., L.L.C. v. CSX Transp., Inc.*, 715 F.3d 479, 486 (3d Cir. 2013) (recognizing that the three factors relevant to a determination of whether to apply judicial estoppel are: "(1) irreconcilably inconsistent positions; (2) adopted in bad faith; and (3) a showing that estoppel addresses the harm and no lesser sanction is sufficient.").  Minuteman's constitutional claims against Ellis, Zimmerer, and Kane also satisfy the statute of limitations under the relation-back doctrine.  *See* Fed. R. Civ. P 15(c)(1)(B); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 196 (3d Cir. 2001) (discussing the "shared attorney" method of imputing notice under Rule 15(c)).  Even if the relation-back doctrine did not apply, Minuteman's malicious-prosecution claims would survive as accrual occurs on receipt of a favorable termination.  *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016).

[128] 512 U.S. 477 (1994).

[129] *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (internal quotation marks and citations omitted).

necessarily imply' that his prior conviction or sentence was invalid."[130]  In this Circuit, favorable termination requires an outcome indicative of the plaintiff's innocence.[131]

Defendants argue that Plaintiffs' Fourth Amendment claims are barred by *Heck*.  They contend that Plaintiffs' search and seizure claims arising from the May 2013 warrants cannot proceed because their success would necessarily imply the invalidity of Brian Bolus's tax-evasion conviction.  They premise this on the assertion that evidence collected during the May 2013 searches was used to secure Bolus's guilty plea.  Defendants also assert that Plaintiffs' claims fail because the state proceedings resulted in a non-party entering into ARD and therefore did not terminate favorably.

### 1.    Search and Seizure Claims

Under certain circumstances, a plaintiff may state a Fourth Amendment search or seizure claim without showing favorable termination.[132]  This is because doctrines like independent source, inevitable discovery, and harmless error allow unconstitutionally collected evidence to be used against criminal defendants.[133]  To

---

[130]  *Id.* (citations omitted).

[131]  *Bronowicz v. Allegheny Cnty.*, 804 F.3d 338, 346 (3d Cir. 2015).  The Court notes that the Supreme Court has recently granted certiorari to answer the question of whether *Heck* requires an affirmative indication of innocence to satisfy the element of favorable termination.  *Thompson v. Clark*, 794 Fed. Appx. 140 (2d Cir. 2020), *cert. granted*, 209 L. Ed. 2d 263 (Mar. 11, 2021) (No. 20-659).

[132]  *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Division of State Police*, 411 F.3d 427, 448-49 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181, 188 (3d Cir. 2010).

[133]  *Id.* at 447-48; *see Heck*, 512 U.S. at 487 n.7.

determine whether a given claim is barred by *Heck*, courts conduct a "fact-based inquiry."[134]

This inquiry requires courts to evaluate the evidence collected during a search, its use in securing the underlying conviction, and whether the evidence would have been suppressed.[135]  For example, where the plaintiff challenges the only evidence supporting his conviction as unconstitutionally seized, his claim will be barred.[136]  In these situations, where it is "impossible or improbable" that doctrines such as independent source, inevitable discovery, or harmless error "would have permitted the introduction of the evidence at issue in the criminal proceedings," the *Heck* rule applies.[137]

Plaintiffs contend that a genuine dispute of material fact exists regarding whether any of the evidence collected during the May 2013 searches was used to secure Bolus's conviction.  Without citing to the record, Plaintiffs dismiss Defendants' evidence as insufficient to establish the absence of a genuine dispute which would allow for *Heck*'s application.  By contrast, Defendants point to a combination of direct and circumstantial evidence in an attempt to connect the May 2013 searches to the federal tax conviction.

---

[134] *Gibson*, 411 F.3d at 448.
[135] *Id.* at 451-52.
[136] *Id.* at 452
[137] *Id.* at 449.

Defendants' direct evidence consists of testimony demonstrating that at least one piece of evidence collected during the May 2013 searches was used to establish Bolus's culpability.  At Bolus's federal sentencing, Bolus's attorney argued that $15,000 in cash seized in the May 2013 searches was not connected to what the presentence report described as the offense conduct.[138]  Bolus did not, however, formally object to the presentence report's inclusion of that evidence as offense conduct.[139]

Circumstantial evidence includes testimony describing the sheer breadth of documents seized,[140] and stating that the FBI and perhaps the IRS were present during or involved with the May 2013 searches.[141]  Defendants also cite documentary evidence showing that the FBI was involved in the investigation,[142] and that Bolus's tax conviction arose from Minuteman's business expenses.[143] Defendants argue that, taken together, this evidence is sufficient to show that Plaintiffs' search and seizure claims are barred.

The Court agrees.  Plaintiffs fail to meet their burden of showing a genuine dispute of material fact under Rule 56(c) as they neither introduce evidence to

---

[138]  Doc. 256-1 at 20:5-21:3.
[139]  *Id.* at 20:25-21:1.
[140]  Doc. 248-58 at 103:16-25; Doc. 256-1 at 18:5-21.
[141]  Doc. 248-67 at 131:5-18, 151:18-152:1.
[142]  Doc. 248-39.
[143]  *United States v. Bolus*, No. 4:15-CR-276, Doc. 36 at 10.

counter nor make any attempt to contradict Defendants' submissions.[144]  Further,

the undisputed facts demonstrate that at least one piece of evidence seized during

the May 2013 was used as a basis of Bolus's conviction.  As it is highly

improbable that this evidence would have been subject to the inevitable-discovery,

independent-source, or other similar doctrine, and as Plaintiffs' claims would

undermine a factual predicate of Bolus's conviction, the Court concludes that *Heck*

applies.  Because no reasonable jury considering these facts could hold otherwise,

summary judgment is entered on Plaintiffs' search and seizure claims.

### 2.    Favorable Termination

The Court next considers whether Plaintiffs' malicious-prosecution claims

are barred by *Heck*.[145]  Under *Heck*, a malicious-prosecution claim does not accrue

"until the criminal proceedings have terminated in the plaintiff's favor."[146]

Favorable termination is only satisfied where a plaintiff's criminal case was

---

[144]  The only materials Plaintiffs cite is a statement from the sentencing judge acknowledging that Bolus believed the state charges against him were politically motivated and baseless.  Doc. 256-1 at 8:2-7 ("I take it that it is essentially the defendant's position that these charges were politically motivated in some respects . . . I got that very clear sense from your submissions.  I will certainly take that into consideration.").  Because this statement does not purport to dispute Defendants' evidence, it is insufficient to create a genuine dispute of material fact under Rule 56(c).

[145]  Though Defendants do not specifically challenge Plaintiffs' malicious-prosecution claims, they argue that Plaintiffs' Fourth Amendment claims are broadly precluded under *Heck*'s favorable-termination rule.  As the Court has already concluded that Plaintiffs' search and seizure claims are barred, it solely addresses Plaintiffs' claims for malicious prosecution.

[146]  *Heck*, 512 U.S. at 489.

"disposed of in a way that indicates the innocence of the accused."[147]   In general, a

plaintiff may indicate his innocence by showing one of the following:

- A discharge by a magistrate at a preliminary hearing;

- The refusal of a grand jury to indict;

- The formal abandonment of the proceedings by the public prosecutor;

- The quashing of an indictment or information;

- An acquittal; or

- A final order in favor of the accused by a trial or appellate court.[148]

But the favorable-termination element "is not categorically satisfied

whenever the plaintiff is acquitted of just one of several charges in the same

proceeding."[149]   Rather, courts must look to the totality of the circumstances to

determine whether the case terminated in a way which indicates the plaintiff's

innocence.[150]   For example, where charges are dropped due to lack of sufficient

evidence, favorable termination is generally satisfied.[151]   Where charges are

dropped as part of a plea agreement or compromise, it is not.[152]

Defendants assert that Plaintiffs did not receive a favorable termination

because the charges against Bolus and Minuteman were dropped as part of a plea

---

[147]   *Allen v. N.J. State Police*, 974 F.3d 497, 502 (3d Cir. 2020).

[148]   *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009) (en banc) (internal quotation marks and citations omitted).

[149]   *Id.* at 188.

[150]   *Allen*, 974 F.3d at 503.

[151]   *See id.*; *cf. Donahue v. Gavin*, 280 F.3d 371, 384 (3d Cir. 2002) (holding that a prosecutor's request for a *nol pros* was not a favorable termination because it was only sought for purposes of conserving state resources).

[152]   *Curry*, 835 F.3d at 378; *e.g.*, *Bradford v. Bolles*, 645 Fed. Appx. 157, 160 (3d Cir. 2016).

agreement.  Since the agreement provided that a non-party company owned by Bolus would plead guilty to two misdemeanors and enter into ARD, and the Third Circuit does not consider ARD to be a favorable termination, Defendants argue that Plaintiffs' malicious-prosecution claims arising from the dismissed charges are barred.  Plaintiffs respond that a factual dispute exists regarding the identity of the company which entered into ARD and that, alternatively, the convictions are separable from the dismissed charges.

The Court finds that Plaintiffs cannot show favorable termination regarding the theft and environmental cases.  It is undisputed that the charges asserted in these proceedings were dropped as a result of a plea agreement between the OAG and a company owned by Brian Bolus.  It is also undisputed that the company entered into ARD.  Given that charges dropped as part of a compromise or entry into ARD are not favorable terminations,[153] the Court concludes that Defendants are entitled to summary judgment on these claims as a matter of law.

Nevertheless, Plaintiffs' malicious-prosecution claims arising from the insurance-fraud case may proceed.  The OAG voluntarily dropped these charges for lack of evidence.  And unlike the environmental- and theft-related charges which were dismissed under a plea agreement, the insurance-fraud charges were withdrawn on their own merits.  This is sufficient to affirmatively indicate

---

[153] *Gilles v. Davis*, 427 F.3d 197, 211 (3d Cir. 2005).

Plaintiffs' innocence and to therefore constitute a favorable termination.[154]

Accordingly, Defendants' motion for summary judgment on these claims is denied.

### B.    Res Judicata and Collateral Estoppel

Res judicata "bars a party from initiating a subsequent suit against the same

adversary based on the same cause of action as a prior suit."[155]  Collateral estoppel

precludes parties from relitigating specific issues of fact or law that were

previously litigated and resolved in other cases.[156]  Both doctrines are fully

applicable to actions brought under § 1983.[157]  They exist to "relieve parties of the

cost and vexation of multiple lawsuits, conserve judicial resources, and, by

preventing inconsistent decisions, encourage reliance on adjudication."[158]

Under Pennsylvania law, collateral estoppel precludes a party from

relitigating an issue where: "(1) the issue decided in the prior case is identical to

the one presented in the later action; (2) there was a final adjudication on the

merits; (3) the party against whom the plea is asserted was a party or in privity

with a party in the prior case; (4) the party or person privy to the party against

whom the doctrine is asserted had a full and fair opportunity to litigate the issue in

---

[154] The same is true for the charges dismissed at the preliminary hearing for lack of evidence.
[155] *Marmon Coal v. Dir., Off. of Workers' Comp. Programs*, 726 F.3d 387, 394 (3d Cir. 2013).
[156] *See Metro. Edison Co. v. Pa. Pub. Util. Comm'n*, 767 F.3d 335, 350 (3d Cir. 2014).
[157] *Allen v. McCurry*, 449 U.S. 90, 105 (1980).
[158] *Id.* at 94.

the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment."[159]

Defendants contend that Plaintiffs' Fourth and Fourteenth Amendment claims arising from the purportedly unlawful retention of that property are barred by collateral estoppel. Defendants argue that Plaintiffs previously litigated this question before the supervising judge when they filed a motion to return their property under Pennsylvania Rule of Criminal Procedure 588. Rule 588 allows "[a] person aggrieved by a search and seizure" to "move for the return of the [seized] property on the ground that he or she is entitled to lawful possession thereof."[160] Unlike a motion to suppress, a Rule 588 motion asks only whether the seized property is contraband; it does not address whether the evidence was lawfully seized.[161]

The Honorable Christopher C. Conner, writing for this Court in *Allen v. Pennsylvania Society for the Prevention of Cruelty to Animals*, grappled with facts

---

[159] *Skotnicki v. Ins. Dep't*, 175 A.3d 239, 247 (Pa. 2017) (internal quotation marks and citations omitted). Because federal courts look to state law to determine the preclusive effect of state-court judgments, the Court analyzes the parties' arguments under Pennsylvania law. *Lance*, 546 U.S. at 466. Additionally, the Court does not address res judicata because a necessary element, that both proceedings involve the same parties, is obviously lacking. *In re Coatesville Area Sch. Dist.*, 244 A.3d 373, 379 (Pa. 2021); *see also Bolus v. Carnicella*, 2020 WL 6531007, at *6 (M.D. Pa. Nov. 5, 2020) (holding that Defendants were not parties to the criminal prosecution against Plaintiffs).

[160] Pa. R. Crim. P. 588(A).

[161] *See Commonwealth v. Janda*, 14 A.3d 147, 166-67 (Pa. Super. Ct. 2011) ("The movant bears the initial burden of coming forth with evidence of lawful entitlement to possession of the property . . . If the movant meets this initial burden, the Commonwealth bears the burden of proving by a preponderance of the evidence that the items in question are contraband." (internal citations omitted)).

remarkably similar to the present case.[162]  There, the plaintiff, Robert Allen, filed

suit under § 1983 against a Pennsylvania humane society for alleged violations

under the Fourth, Fifth, and Fourteenth Amendments.[163]  Allen asserted that the

humane society had unreasonably seized his animals without probable cause and

then retained them for an unreasonable length of time in violation of the Fourth

and Fourteenth Amendments.[164]

Prior to initiating a civil lawsuit, Allen moved under Rule 588 to have his

animals returned.[165]  The state court denied this motion after determining that the

animals were contraband and that Allen had no legitimate property interest in

them.[166]  Judge Conner subsequently held that this ruling precluded Allen's claims

under the doctrine of collateral estoppel.[167]  Judge Conner reasoned that the state

court had conclusively resolved the question of whether Allen had a legitimate

property interest in his animals, and that this barred Allen from relitigating the

issue in federal court.[168]

*Allen* is on all fours with this case.  After their property was seized, Plaintiffs

filed a motion under Rule 588, which was granted in part and denied in part.  The

supervising judge's order necessarily established that Plaintiffs did not have a

---

[162]  488 F. Supp. 2d 450 (M.D. Pa. 2007).
[163]  *Allen*, 488 F. Supp. 2d at 458.
[164]  *Id.*
[165]  *Id.* at 457.
[166]  *Id.* at 466.
[167]  *Id.* at 466-67.
[168]  *Id.*

legitimate property interest in the property not returned.  Further, all elements of collateral estoppel are met: the June Order constitutes a final judgment on the merits,[169] the issue was actually litigated and necessary to the judgment, Plaintiffs were parties to the proceedings, and Plaintiffs had a full and fair opportunity to litigate the question.  Accordingly, collateral estoppel applies, and Defendants are entitled to summary judgment on these claims.

## C.    Prosecutorial Immunity

Section 1983 provides for two types of immunity: qualified and absolute.[170] Qualified immunity insulates governmental officers from liability except in rare circumstances,[171] while absolute immunity serves as a complete bar to damages.[172] Like legislators[173] and judges,[174] prosecutors are protected by absolute immunity.[175] However, the "uniquely heavy" burden of establishing absolute immunity falls on the party asserting the defense,[176] and courts, in general, presume that "qualified rather than absolute immunity" applies.[177]

---

[169] *Id.* at 466; *see Commonwealth v. Harris*, 32 A.3d 243, 248 (Pa. 2011) ("Final orders are those that dispose of all claims and all parties, are explicitly defined as final orders by statute, or are certified as final orders by the trial court or other reviewing body.").

[170] *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006), *abrogated on other grounds*, *Pearson v. Callahan*, 555 U.S. 223 (2009).

[171] *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

[172] *Cf. Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984) (recognizing that a judge's absolute immunity does not bar prospective injunctive relief).

[173] *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951).

[174] *Stump v. Sparkman*, 435 U.S. 349, 359 (1978).

[175] *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976).

[176] *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020).

[177] *Odd v. Malone*, 538 F.3d 202, 207-08 (3d Cir. 2008) (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 355 (3d Cir. 1999)).

To determine whether absolute immunity attaches, courts apply a two-step test.  First, they "ascertain just what conduct forms the basis for the plaintiff's cause of action."[178]  Second, they determine precisely "what function (prosecutorial, administrative, investigative, or something else entirely) that" the alleged conduct served.[179]  Under this functional approach, prosecutors enjoy absolute immunity where acting in a "judicial" or "quasi-judicial" capacity.[180]  By contrast, absolute immunity does not attach to conduct which is administrative or investigative in nature.[181]

Examples of conduct protected by absolute prosecutorial immunity include: appearing as a lawyer for the state in a probable-cause hearing to obtain a search warrant,[182] professionally evaluating evidence gathered by police and preparing it for presentation at trial or before a grand jury,[183] and drafting an affidavit of probable cause.[184]  Additionally, while soliciting testimony for use in grand-jury proceedings is protected by absolute immunity,[185] soliciting general facts or evidence unrelated to any criminal proceedings is generally not.[186]

[178] *Fogle*, 957 F.3d 161 (internal quotation marks and citations omitted).
[179] *Id.* (internal quotation marks and citations omitted).
[180] *Odd*, 538 F.3d at 208.
[181] *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992).
[182] *Burns v. Reed*, 500 U.S. 478, 491 (1991).
[183] *Buckley v. Fitzsimmons*, 509 U.S. 259, 273-74 (1993).
[184] *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997).
[185] *Rose v. Bartle*, 871 F.2d 331, 344 (3d Cir. 1989).
[186] *Joseph v. Patterson*, 795 F.2d 549, 556 (6th Cir. 1986) (collecting cases).

As the Court addresses whether absolute immunity applies, factors such as timing (i.e., pre- or post-indictment) and location (i.e., in- or out-of-court) are useful but not dispositive.[187]  In *Buckley v. Fitzsimmons*, for instance, the Supreme Court held that a prosecutor who fabricated evidence prior to determining that probable cause existed to make an arrest or to initiate judicial proceedings was not protected by prosecutorial immunity.[188]  The Supreme Court noted that a prosecutor typically cannot be considered an advocate before probable cause has been established.[189]

Plaintiffs argue that Carnicella has not met her burden of demonstrating that she is entitled to absolute immunity.  In support, Plaintiffs allege that Carnicella engaged in three acts which they claim fall outside the scope of Carnicella's role as prosecutor.  These acts include: (1) "direct[ing] every step of the investigation" into Bolus and Minuteman; (2) drafting the affidavit of probable cause; and (3) advising agents regarding the May 2013 search warrants and the seizure of Plaintiffs' assets.[190]  Each is discussed in turn.

### 1.    Directing the Investigation

Plaintiffs cite four pieces of evidence purportedly demonstrating that Carnicella directed the OAG's investigation.  This evidence is as follows:

---

[187] *Odd*, 538 F.3d at 210.
[188] 509 U.S. at 274.
[189] *Id.*
[190] Doc. 238 at 12-15.

- Carnicella's "initial investigatory plan," which Carnicella created in August 2011[191];

- Testimony from Bosco that attorneys in the OAG set the focus and direction of criminal investigations[192];

- Testimony from Zimmerer that prosecutors decide what evidence to rely upon and what facts need further verification before being included in an affidavit of probable cause[193]; and

- Lists sent to Bosco in 2012 identifying various leads for him to pursue.[194]

This evidence is insufficient to establish that Carnicella "directed" the OAG investigation as Plaintiffs' claim.[195]  The plan is a single-page document consisting of seven action items that "will be performed in the initial stage" of the Minuteman investigation.[196]  But the plan offers no directives and was sent directly to Parno. Further, Bosco's testimony regarding how OAG prosecutors act *generally* is not enough to show that *Carnicella* directed or controlled the investigation in any personal capacity.

The testimony from Zimmerer is of no help to Plaintiffs as, at most, it proves that Carnicella engaged in conduct covered by absolute immunity. Zimmerer testified that he did not personally verify certain information in the affidavit of probable cause, and that verification would have been "Carnicella's

---

191  Doc. 247-34.
192  Doc. 248-59 at 20:8-12.
193  Doc. 248-64 at 189:21-190:3.
194  Doc. 247-35.
195  Though the burden of proving absolute immunity falls on Carnicella, Plaintiffs cannot avoid summary judgment by making vague factual assertions without evidentiary support.
196  Doc. 247-34.

call."[197]  However, preparing an affidavit of probable cause is wholly protected by prosecutorial immunity.[198]  In the Court's view, this naturally extends to determining what evidence needs to be further verified and what may be excluded, thus rendering this purported fact unpersuasive.

Finally, Carnicella's emails to Bosco identifying leads to pursue does not demonstrate that she directed the investigation.  The first email provides that "[t]he list below is what we talked about when we were reviewing the case."[199]  While it does ask Bosco to "[p]lease begin to work on these when you get the chance," this alone is not enough to show direction.[200]  Compounding this is Carnicella's uncontroverted testimony that these emails simply memorialized previous conversations with Bosco, and that she had no authority to direct or control the agents working the case.[201]

Plaintiffs' arguments fail because they introduce no evidence showing that Carnicella actually directed the investigation, and the conduct that they can establish is protected by prosecutorial immunity.  As a result, there exists no genuine dispute of material fact precluding summary judgment.  The Court therefore concludes that Carnicella is protected by absolute immunity and is

---

[197]  The Court notes that this testimony does not even establish that the information was unverified.
[198]  *Kalina*, 522 U.S. at 129.
[199]  Doc. 247-35.
[200]  *Id.*
[201]  Doc. 247-50 at 72:19-73:16, 77:4-20.

entitled to summary judgment as a matter of law on the claims against her arising from the conduct discussed above.

### 2.    Drafting the Affidavit of Probable Cause

Carnicella is also covered by absolute immunity for her role in drafting the affidavit of probable cause.  In *Kalina v. Fletcher*, the Supreme Court held that absolute immunity protected a prosecutor who prepared and filed an affidavit of probable cause.[202]  The only exception to this rule is where a prosecutor personally attests to the facts offered in the affidavit.[203]  Because Plaintiffs complain solely that Carnicella inadequately *drafted* the affidavit of probable cause supporting the May 2013 warrants, absolute immunity attaches and entitles Carnicella to summary judgment.

### 3.    Advising Agents Regarding the Execution of the Search Warrants

Lastly, Plaintiffs are unable to show that Carnicella advised OAG agents at any stage of the investigation.  Instead of citing to the record, Plaintiffs reference a handful of paragraphs from their statements of fact.  But these paragraphs are largely irrelevant, duplicative, and unhelpful.[204]  The Court cannot hold Carnicella

---

[202]  522 U.S. at 129.

[203]  *Id.* at 129-131.

[204]  For example, two paragraphs stand for the proposition that Carnicella prepared or edited the affidavit of probable cause.  Doc. 238 at ¶¶ 9, 29; Doc. 242 at ¶ 20.  Others do not even reference Carnicella.  Doc. 238 at ¶¶ 20, 26; Doc. 242 at ¶¶ 26, 29.  Still more simply rearticulate the legal arguments presented in Plaintiffs' briefing (i.e., that Carnicella "directed" the investigation, drafted the affidavit of probable cause, and provided advice to law-enforcement officers.  Doc. 238 at ¶ 35; Doc. 242 at ¶ 9.

liable under such sparse facts.  Consequently, the Court determines that Carnicella is protected by absolute immunity and is entitled to summary judgment on all claims against her.

## VIII.  CONSTITUTIONAL CLAIMS

Even if none of the abovementioned jurisdictional and affirmative defenses apply, summary judgment is warranted on the merits of Plaintiffs' constitutional claims.  Plaintiffs fundamentally fail to present evidence supporting each element of their claims as required by Rule 56, and cannot point to any genuine dispute of material fact which would preclude summary judgment.  Consequently, Defendants' motions for summary judgment on Plaintiffs' constitutional claims are granted on the merits.

### A.    Fourth Amendment Claims

The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[205]

"As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental search is 'reasonableness.'"[206]  Ordinarily, for a search or seizure to be reasonable, it must be conducted pursuant to a search

---

[205]  U.S. Const. Amend. IV.
[206]  *Maryland v. King*, 569 U.S. 435, 447 (2013) (internal quotation marks and citations omitted).

warrant that is supported by probable cause.[207]  Even where this occurs, however,

an individual may challenge the manner in which a search or seizure is

conducted.[208]  An individual may, for example, claim that a search resulted in

excessive force.[209]  She might also contest the duration of a seizure.[210]

### 1.    Warrants

Plaintiffs assert two claims challenging the May 2013 warrants.  The first

maintains that the warrants were supported by a false affidavit of probable cause.

The second argues that the warrants were unreasonably broad because they

authorized the search and seizure of millions of dollars in assets and property.[211]

Both claims are meritless.

### a.    False Affidavit of Probable Cause

To successfully challenge a probable-cause determination underlying an

otherwise valid warrant, a plaintiff must prove that: (1) the affidavit of probable

cause submitted in support of the warrant contained false statements or omissions

---

[207] *United States v. Goldstein*, 914 F.3d 200, 202 (3d Cir. 2019).

[208] *Dalia v. United States*, 441 U.S. 238, 258 (1979).

[209] *E.g.*, *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193-94 (3d Cir. 1995).

[210] *E.g.*, *Illinois v. McArthur*, 531 U.S. 326, 331 (2001) (holding that it was reasonable for an officer to prevent a suspect from entering his home for two hours to receive a search warrant after receiving information that drugs were in the home); *Baker*, 50 F.3d at 1192 (finding a fifteen-minute detention during a drug raid reasonable).

[211] Though their briefing is not entirely clear, Plaintiffs' complaint regarding the overall reasonableness of the seizure's scope appears to implicate the warrant's breadth.  *See, e.g.*, Doc. 238 at 23-24 (arguing, without legal citation, that the May 2013 warrants authorized the seizure of property without probable cause); Doc. 242 at 23 (same).  In the interest of comprehensiveness, the Court addresses both whether the warrants are overbroad and whether the seizures, under the totality of the circumstances, were reasonable.

made "with a reckless disregard for the truth'" and (2) "such statements or omissions are material, or necessary, to the finding of probable cause."[212]   In analyzing this question, courts must initially identify any recklessly included or omitted assertions of fact.[213]   After any such assertion is excised from or added to the affidavit, courts determine whether the reconstructed version would establish probable cause.[214]

### i.     Misstatements and Omissions

A statement "is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reason to doubt the accuracy of the information he reported.'"[215]   Even minor details can constitute a misleading statement where it demonstrates "that the affiant willingly and 'affirmatively distort[ed] the truth.'"[216]   Omissions are made with reckless disregard when an officer withholds information that any reasonable person would understand "was the kind of thing the judge would wish to know."[217]

Plaintiffs contest a number of perceived misstatements and omissions.  The alleged misstatements occur in paragraphs 41-57, and 90 of the affidavit of

---

[212]   *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997).
[213]   *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 469-70 (3d Cir. 2016).
[214]   *Id.*
[215]   *Andrews v. Sculli*, 853 F.3d 690, 698 (3d Cir. 2017) (internal quotation marks and citations omitted).
[216]   *Id.* (alteration in original) (internal quotation marks and citationa omitted).
[217]   *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (internal quotation marks and citations omitted).

probable cause.[218]  Paragraphs 41-55, drafted by Antonucci, contain various factual averments regarding Brian Bolus's ownership of Minuteman, Plaintiffs' property, and Minuteman's financial information.[219]  Paragraphs 56 and 57 certify Antonucci's and Bosco's belief that probable cause existed to justify a search warrant.[220]  Paragraph 90 consists of a boilerplate statement that the statements in the affidavit were supported by, among other things, information received from agents involved in the investigation.[221]

Plaintiffs claim that these paragraphs constitute misstatements because Antonucci was not involved in the Minuteman investigation and because his knowledge of the case was based solely on information provided to him by Bosco.[222]  Curiously, however, Plaintiffs introduce no evidence to cast doubt on the statements' *truthfulness*.  Nor do they discuss the information that Bosco gave to Antonucci or whether either party had any reason to doubt its accuracy. Plaintiffs instead rest on Antonucci's lack of experience and knowledge regarding the investigation.

In doing so, Plaintiffs misapply the standard.  The question before the Court is not whether Antonucci had perfect or personal knowledge of the facts to which

---

[218] The Court accordingly presumes that the unchallenged paragraphs do not contain material misstatements or omissions.
[219] Doc. 248-1 at ¶¶ 41-55.
[220] *Id.* at ¶¶ 56-57.
[221] *Id.* at ¶ 90.
[222] Doc. 248-56 at 116:6-7, 119:3-13.

he attested.  Rather, it is whether there was obvious reason for Antonucci to doubt the truthfulness of his statements or the information given to him by Bosco.   As the Supreme Court has stated, "truthful" does not necessarily mean correct; it requires only that "the information put forth is believed or appropriately accepted by the affiant as true."[223]

Consequently, Plaintiffs cannot succeed because they present no evidence showing that Antonucci made false statements in reckless disregard of the truth. While they make much of Antonucci's unfamiliarity with the case, Plaintiffs offer nothing showing that anything he said was untruthful.  In fact, pointing to the contrary is Antonucci's testimony that his statements were based on information provided by Bosco, and that he "had no reason to believe" that the information was not correct.[224]  This is plainly insufficient to survive summary judgment.

The identified omissions also do not reflect a reckless disregard for the truth. Plaintiffs assert, with virtually no explanation, that Antonucci and Bosco improperly omitted: (1) that the true reason for executing the search warrants was to pursue a common-law civil forfeiture; (2) that Brian Bolus had repeatedly offered to cooperate with the OAG investigation; and (3) results from an exculpatory dig and on-the-ground environmental investigation.

---

[223]  *Franks v. Delaware*, 438 U.S. 154, 165 (1978); *United States v. Harvey*, 2 F.3d 1318, 1323 (3d Cir. 1993).

[224]  Doc. 248-56 at 115:7-9, 164:12-14, 167:2-2.

Plaintiffs' assertions are baseless.  The first two omissions have no bearing on probable cause and are therefore irrelevant.[225]  The third, while relevant, actually cuts against Plaintiffs' claims because the dig results showed that Minuteman violated the law.[226]  Given the number of statements already offered in support of the warrants, it does not appear that this one fact was something that a reasonable person would expect a magistrate would want to know.  Consequently, the Court holds that Plaintiffs have not met their burden under Rule 56 and that Defendants are entitled to summary judgment.

### ii.        Materiality and Probable Cause

Alternatively, summary judgment is also warranted because any improperly included statements or excluded omissions were not material to the original probable-cause determination.[227]  "Far from demanding proof of guilt beyond a reasonable doubt, '[p]robable cause exists if there is a fair probability that the person committed the crime at issue.'"[228]  Probable cause is a fluid concept which turns on "the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."[229]

---

[225] Neither the ultimate purpose of a particular search nor a defendant's cooperation implicates the presence or absence of probable cause.  *See Wren v. United States*, 517 U.S. 806, 813 (1996).

[226] Doc. 247-19 at 2.

[227] *Sherwood*, 113 F.3d at 399.

[228] *Dempsey*, 834 F.3d at 467 (alteration in original) (internal quotation marks and citations omitted).

[229] *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) (internal quotation marks and citations omitted).

"Probable cause can be, and often is, inferred from 'the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence].'"[230]  And it must be analyzed in light of "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."[231]

A magistrate's determination of probable cause is entitled to great deference.[232]  Accordingly, a district court's review is circumscribed to analyzing whether the magistrate had a "substantial basis" for his decision.[233]  Although courts are not to merely "rubber stamp a magistrate's conclusions," they must "heed the Supreme Court's direction that 'doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'"[234]

Probable cause is ordinarily a question of fact for the jury.[235]  Nevertheless, a district court may conclude that probable cause exists as a matter of law "if the evidence, viewed most favorably to [the plaintiff], reasonably would not support a contrary factual finding."[236]  Where a court is analyzing a reconstructed affidavit which a magistrate had no opportunity to review, the court may consider whether

---

[230] *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (alteration in original) (citations omitted).

[231] *Illinois v. Gates*, 462 U.S. 216, 231 (1983) (internal quotation marks and citations omitted).

[232] *Whitner*, 219 F.3d at 296.

[233] *Stearn*, 597 F.3d at 554.

[234] *Id.* (internal quotation marks and citations omitted).

[235] *Sherwood*, 113 F.3d at 401.

[236] *Id.*

"a reasonable municipal court judge, presented with the corrected affidavit," would conclude that the affidavit was sufficient to establish probable cause.[237]

The challenged statements and omissions here are immaterial because probable cause exists from the face of the reconstructed affidavit. The uncontested paragraphs describe in great detail evidence demonstrating that Minuteman and Bolus committed various criminal offenses.[238] These paragraphs create a broad basis to believe that Minuteman and Bolus unlawfully obtained and possessed proceeds of a crime,[239] and that evidence of these crimes would be found on Plaintiffs' property. As discussed above, the added omissions are of no moment.

Moreover, Plaintiffs cannot explain how the contested statements and omissions were material to the magistrate's original determination of probable cause. Plaintiffs contend only that the magistrate relied on the first six paragraphs of the affidavit, which discuss Antonucci's qualifications, in issuing the warrants. But Plaintiffs do not challenge these paragraphs, nor do they explain how the contested paragraphs were necessary or significant to the original probable-cause

---

[237] *Id.*

[238] For example, the affidavit discusses numerous interviews conducted with current and former Minuteman employees and state-agency specialists. Doc. 248-1 at ¶¶ 13-18, 58 (office manager), 19-22 (administrative assistant), 23-29, 86, 88-89 (accounts-receivable supervisor), 30 (shop foreman), 31 (hazmat technician), 32-33, 59 (manager), 34 (truck driver), 36, 69 (hazardous-materials specialist), 37 (environmental-waste coordinator), 38-39 (accounting clerk), 60 (driver), 61 (geological specialist), 62 (emergency-response supervisor), 63-64, 70-71, 76 (hazmat spill supervisor), 65-68 (former hazmat technician), 72-73, 78-79 (laborers).

[239] That the reconstructed affidavit does not list specific financial transactions conducted by Bolus or his businesses does not defeat probable cause because the remaining averments establish that Plaintiffs' bank accounts contained evidence of a crime.

determination.  As a result, Defendants' motions for summary judgment on these

claims are granted.

### b.    Breadth

An overly broad warrant violates the Fourth Amendment's particularity

requirement because it "describe[s] in both specific and inclusive generic terms

what is to be seized," but also "authorizes the seizure of items as to which there is

no probable cause."[240]  In general, a warrant is not overbroad where it is limited in

time, linked to specifically enumerated federal crimes, and related to named

corporate entities.[241]  The sole requirement is that each piece of evidence identified

in the warrant be supported by probable cause.[242]

Warrants A, B, and C, authorizing searches of two Minuteman properties

and the Bolus residence, are essentially identical.[243]  Both identified the buildings

to be searched, as well as a list of companies whose records were to be seized.[244]

The warrants then described the targeted items and property.  This included

records, documents, and data relating to:

---

[240]  *United States v. Ninety-Two Thousand Four Hundred Twenty-Seven Dollars and Fifty-Seven Cents*, 307 F.3d 137, 149 (3d Cir. 2002) (*$92,422.57*) (internal quotation marks and citations omitted); *see United States v. Tracy*, 597 F.3d 140, 146 (3d Cir. 2010).

[241]  *See United States v. Yusuf*, 461 F.3d 374, 395 (3d Cir. 2006).

[242]  *$92,422.57*, 307 F.3d at 148.

[243]  Doc. 248-20; Doc. 248-21; Doc. 248-22.  The only distinction is the location to be searched.

[244]  Doc. 248-20 at 3-4; Doc. 248-21 at 3-4; Doc. 248-22 at 3-4.  The warrant names fourteen companies, including Minuteman Spill Response, Minuteman Environmental Services, Inc., Minuteman Towing & Repairs/Minuteman Towing, B3 Development, LLC, B3 Management, Inc., B3 Realty, Inc., BPK Management, Inc., BPK Captive, Inc., BPK Holdings, LLC, Everest Aviation, LLC, Everest Environmental Services, Inc., Homes by Integrity, Inc., BS Realty, and Integrity Building Systems, Inc.  Doc. 248-20 at 3-4; Doc. 248-21 at 3-4; Doc. 248-22 at 3-4.

- Minuteman's finances and business activities (accounts receivable, accounts payable, financial/bank records, business contracts, customer lists, business accounts, invoices, and manifests);

- Minuteman's correspondence and phone records;

- Minuteman's internal business operations (PEMA/hazmat records, safety records, policies and procedures, instruction manuals, landfill disposal receipts and/or weigh tickets, waste disposal receipts, operating logs and documentation, towing records, spill remediation records, oil and gas related records, tracking logs, laboratory/sample results and related records, and accident site files);

- Minuteman's personnel and employees (personnel files, employee work assignments, and employee time sheets); and

- Minuteman's drivers and vehicles (PennDOT records, driver logs, vehicle logs, vehicle inspection logs and stickers, and vehicle ownership records).[245]

Warrants A, B, and C also sought "United States currency" and

technological devices and software.[246]  Warrant F specified a number of bank

accounts owned by Plaintiffs at M&T Bank to be searched, and identifed

documents at M&T Bank arising from various business and financial

transactions.[247]

---

[245]  Doc. 248-20 at 4; Doc. 248-21 at 4; Doc. 248-22 at 4.

[246]  Doc. 248-20 at 4; Doc. 248-21 at 4; Doc. 248-22 at 4.  Included in this are GPS tracking devices and associated software in Minuteman company vehicles; computers, file servers; laptop computers and other portable computers; electronic storage devices such as hard drives, floppy disks, ZIP disks, thumb drives, data tapes, optical storage devices, and personal digital assistants (PDA) such as Palm Pilots, nextel devices, programmable phones or other devices capable of storing data electronically; system documentation; Quickbooks, InTow, BlueFolder, ADP, Oildex and MePush information; software, information stored in or associated with Excel programs.  Doc. 248-20 at 4; Doc. 248-21 at 4; Doc. 248-22 at 4.

[247]  Doc. 248-23 at 5-9.  For example, the warrant seeks all documents pertaining to investment and retirement accounts, bank accounts, loans or mortgages, Certificates of Deposit, customer correspondence, checks, and safe-deposit box rentals.  *Id.*

The warrants are not overly broad because each item, or category of item, is supported by probable cause.  The affidavit establishes probable cause to believe that Minuteman and Brian Bolus had violated environmental regulations and committed theft by overbilling clients.  Consequently, it is reasonable to expect that evidence of such crimes would be found in Plaintiffs' bank accounts, corporate documents, company vehicles, and personal residence.  Whether or not the searches actually uncovered such evidence is beside the point—what matters it that probable existed to search and seize Plaintiffs' property pending the initiation of criminal proceedings.  Because probable cause existed, the warrants are not overly broad, and Defendants are entitled to summary judgment.

### 2.    Seizures

Plaintiffs next raise two claims challenging the reasonableness of the May 2013 searches and seizures.  The first asserts that the seizure of Plaintiffs' assets, whether or not executed pursuant to a warrant, was simply unreasonable.  The second contends that Ellis supervised and directed the use of excessive force against Karen and Preston Bolus during the Bolus-family home raid.

### a.    Assets

Citing no law or facts, Plaintiffs maintain that a genuine dispute of material fact exists regarding the reasonableness of the May 2013 seizures.  The Court is puzzled, however, because Plaintiffs' argument is contrary to the law.  In general, a

seizure is reasonable where it is supported by a warrant and probable cause.[248]  As discussed above, the May 2013 seizures were executed pursuant to valid warrants and were based on probable cause.  Consequently, the seizures were reasonable. As Plaintiffs offer nothing to refute this, Defendants' motions to dismiss these claims are granted.

### b.    Excessive Force

"To maintain an excessive force claim, 'a plaintiff must show that a seizure occurred and that it was unreasonable.'"[249]  "The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations."[250] Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[251]

Because § 1983 does not provide for liability under the theory of *respondeat superior*,[252] a plaintiff must demonstrate that a supervising officer either personally and directly participated in a constitutional violation, or that he is subject to

---

[248] *See Bailey v. United States*, 568 U.S. 186, 192-93 (2013); *Goldstein*, 914 F.3d 200.
[249] *Williams v. City of York*, 967 F.3d 252, 259 (3d Cir. 2020) (citations omitted).
[250] *Id.* (internal quotation marks and citations omitted).
[251] *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).
[252] *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015).

supervisory liability.  The Third Circuit generally recognizes two theories of supervisory liability.[253]  The first allows for liability where a supervisor "with deliberate indifference, established and maintained a policy, practice or custom which directly caused constitutional harm."[254]

The second theory provides for liability where a supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."[255]  The knowledge element under this theory "must consist of either 'contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents.'"[256]  Evidence of knowledge may be circumstantial,[257] but the knowledge must be actual, not constructive.[258]  The parties appear to agree that Plaintiffs proceed only under the second theory.

---

[253] *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010).

[254] *A.M. ex rel. J.M.K. Luzerne Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration omitted) (internal quotation marks and citations omitted).

[255] *Id.*  Courts have expressed reservations regarding whether this theory's "knowledge and acquiescence" standard survived *Iqbal*.  *Argueta v. U.S. Immigr. & Customs Enf't*, 643 F.3d 60, 70 (3d Cir. 2011) (collecting cases); *e.g.*, *Jankowski v. Lellock*, 649 Fed. Appx. 184, 187 (3d Cir. 2016)).  The Third Circuit has declined to interpret *Iqbal* as fully abolishing supervisory liability, although it has recognized that a case-by-case reevaluation of relevant constitutional standards may be appropriate.  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 319-20 (3d Cir. 2014), *rev'd on other grounds sub nom.*, *Taylor v. Barkes*, 575 U.S. 822 (2015).  The Court need not address the question of whether a plaintiff must show more than mere "knowledge and acquiescence" (i.e., direct participation) of constitutional violations because it finds that Plaintiffs do not meet the lower knowledge standard.

[256] *Murphy v. Middlesex Cnty.*, 361 F. Supp. 3d 376, 387 (D.N.J. 2019) (quoting *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2002)).

[257] *Baker*, 50 F.3d at 1194.

[258] *Chavarriaga*, 806 F.3d at 222.

Plaintiffs argue that genuine disputes of material fact exist regarding whether the seizure of Karen and Preston Bolus was reasonable and whether Ellis had knowledge of and acquiesced in the SOG's excessive use of force.  Addressing the former, Plaintiffs cite testimony that SOG officers pointed guns at the unarmed Karen and Preston.[259]  The Court finds that such evidence creates a genuine dispute regarding the reasonableness of the force used during that search.[260]  Nevertheless, Plaintiffs' claims fail because they cannot show the requisite level of Ellis's personal involvement.[261]

Plaintiffs assert two theories of liability.  First, they argue that Ellis is liable for his involvement in sanctioning the search in the first instance.  This theory is fundamentally flawed, however, because there is both no evidence to show Ellis had any control over the search, and there is nothing inherently improper about the fact that a SOG team was used.  Plaintiffs do not contest the fact that firearms were present at the Bolus residence, or that the decision to send in a SOG team was unreasonable.  Accordingly, Ellis cannot be liable under this theory.

---

[259]  Doc. 248-66 at 8:14-23, 13:20-22.

[260]  *E.g.*, *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006) (holding that four officers were not entitled to qualified immunity where they "jumped on" a defendant who posed little threat to the officers, "pointed guns at his head, handcuffed him, and sprayed him with mace"); *Baker*, 50 F.3d 1186, 1193-94 (3d Cir. 1995) (denying a motion for summary judgment because a genuine dispute of material fact existed regarding whether a supervisor had knowledge of and acquiesced in the use of excessive force by officers who were holding a handcuffed family at gunpoint); *see also Baird v. Renbarger*, 576 F.3d 340, 346 (7th Cir. 2009) ("Other circuits have also held that pointing guns at persons who are compliant and present no danger is a constitutional violation.").

[261]  The Court notes that Plaintiffs would present a much different case had they actually sued the police officers involved in the search.

- 50 -

Second, Plaintiffs contend that they have presented sufficient circumstantial evidence establishing that Ellis had knowledge of and acquiesced to the use of force as it occurred during the search.  In support, they cite *Festa v. Jordan*, where this Court declined to enter summary judgment on claims against a prosecutor who purportedly supervised unconstitutional searches and seizures.[262]  The Court identified four pieces of circumstantial evidence that, when considered together, were sufficient to survive summary judgment.[263]  This included that the prosecutor had: (1) informed police a non-party would be present with the plaintiff; (2) asked that the plaintiff's children not be present; (3) been present at the scene of an initial car search; and (4) was present at a subsequent search of the plaintiff's home.

Plaintiffs argue that *Festa* forecloses summary judgment because the record shows that Ellis was present at the scene of the Bolus-family home raid.  But *Festa* is distinguishable and does not stand for the proposition that mere presence alone is enough to establish knowledge and acquiescence.  Unlike in *Festa*, the record here shows only that Ellis spent the entirety of the contested seizure in the driveway speaking with Brian Bolus.  This, alone, is simply not enough evidence from which a rational jury might rule in favor of Plaintiffs.  Defendants' motions for summary judgment on these claims are therefore granted.

---

[262]  803 F. Supp. 2d 319, 325 (M.D. Pa. 2011).
[263]  *Id.*

### 3. Retention of Property

Plaintiffs additionally assert that Carnicella and Kane violated the Fourth Amendment by misleading the supervising judge in order to improperly delay the return of Plaintiffs' assets.  This claim is not cognizable under the Fourth Amendment.  "It is well settled that the government is permitted to seize evidence for use in investigation and trial, but that such property must be returned once criminal proceedings have concluded, unless it is contraband or subject to forfeiture."[264]  However, Plaintiffs cite no case law establishing that the government's failure to return property constitutes a violation of the Fourth Amendment.[265]  This being the case, Defendants' motions for summary judgment on these claims are granted.

### 4. Malicious Prosecution

To succeed on a malicious-prosecution claim, a plaintiff must establish that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding terminated in his favor; (3) the defendants "initiated the proceeding without probable cause"; (4) the defendants "acted maliciously or for a purpose other than bringing the plaintiff to justice"; and (5) the plaintiff "suffered deprivation of

---

[264] *United States v. Chambers*, 192 F.3d 374, 376 (3d Cir. 1999).

[265] It would appear that such a claim would arise from the Due Process Clause of either the Fifth or Fourteenth Amendment.  *E.g.*, *Schrob v. Catterson*, 948 F.2d 1402, 1419 (3d Cir. 1991).

liberty consistent with the concept of seizure as a consequence of a legal proceeding."[266]

Summary judgment is appropriate here because Plaintiffs cannot show the absence of probable cause.[267]  In a § 1983 malicious-prosecution action, "a grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute."[268]  A plaintiff may rebut this presumption by showing "that the presentment was procured by fraud, perjury or other corrupt means."[269]  Plaintiffs offer no evidence of fraud, perjury, or corruption during the grand-jury proceedings.  And though they insist that the investigation was politically motivated, they cite no firm evidence to prove it.  Accordingly, Defendants' motions for summary judgment on these claims are granted.

## B.    Procedural Due Process

Due process "is a flexible concept that varies with the particular situation."[270]  It "was intended to give Americans at least the protection against governmental power that they had enjoyed as Englishmen against the power of the

---

[266] *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017) (internal quotation marks and citations omitted).  The elements of malicious prosecution under Pennsylvania law similarly require the plaintiff to show that (1) the defendant initiated criminal proceedings against him without probable cause, (2) the defendant did so with malice, and (3) the proceedings terminated in the plaintiff's favor.  *Id.* (quoting *Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Loc. Union 249*, 544 A.2d 940, 941 (Pa. 1988)).

[267] As discussed above, the favorable-termination element is also lacking under Plaintiffs' claims arising from the environmental and theft proceedings.

[268] *Rose*, 871 F.2d at 353.

[269] *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 363 (3d Cir. 2003) (internal quotation marks and citations omitted).

[270] *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

Crown."[271]  "Among the historic liberties so protected was a right to be free from and to obtain judicial relief for unjustified intrusions on personal security."[272]  It is thus "fundamental that the state cannot hold and physically punish an individual except in accordance with due process of law."[273]

To determine what process is due in a particular case, courts must balance the individual's private interest, the risk of erroneous deprivation and the probable value of additional or substitute procedural safeguards, and the government's interest.[274]  Due process typically requires a pre-deprivation hearing before the state takes a person's liberty or property.[275]  Nevertheless, a statutory or common-law post-deprivation hearing may be adequate in some circumstances.[276]

In *McKenna v. Portman*, the Third Circuit held that Pennsylvania Rule of Criminal Procedure 588 provided a constitutionally adequate post-deprivation procedure.[277]  Though nonbinding, *McKenna* is persuasive.  As Plaintiffs offer no evidence to contradict this holding, and as their entire argument rests on the inadequacy of Rule 588,[278] their claim fails as a matter of law.  Consequently,

---

[271]  *Ingraham v. Wright*, 430 U.S. 651, 672-73 (1977).

[272]  *Id.* at 673.

[273]  *Id.*

[274]  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

[275]  *Zinermon*, 494 U.S. at 127.

[276]  *Id.* at 128.

[277]  538 Fed. Appx. 221, 224-25 (3d Cir. 2013); *see also Passalacqua v. City of Philadelphia*, 2016 WL 7049051, at *9 (E.D. Pa. Dec. 2, 2016); *Sheriff v. Hale*, 2016 WL 4190390, at *14 (E.D. Pa. Aug. 9, 2016); *Williams v. Sminkey*, 2016 WL 161498, at *4 (E.D. Pa. Jan. 14, 2016) (collecting cases).

[278]  It is beyond question that the Fourth Amendment does not require a pre-deprivation hearing prior to execution of a valid search warrant.  *Sanders v. City of San Diego*, 93 F.3d 1423, 1429

Defendants' motions to dismiss Plaintiffs' procedural due-process claims are granted.

### C.      Substantive Due Process

Finally, Plaintiffs' substantive due-process claim is barred by the more-specific provision rule.  Under this rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."[279]  Because Plaintiffs' substantive due-process claims arise from conduct which fits neatly within the rubric of the Fourth Amendment and procedural due process, Defendants' motions for summary judgment on these claims are granted.

## IX.    STATE-LAW CLAIMS AND STATE SOVEREIGN IMMUNITY

Pennsylvania law provides that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity" except where that immunity has been specifically waived by the state

---

(9th Cir. 1996) ("[W]hen seizing property for criminal investigatory purposes, compliance with the Fourth Amendment satisfies pre-deprivation procedural due process as well."); *accord. Tucker v. Williams*, 682 F.3d 654, 661 (7th Cir. 2012); *PPS, Inc. v. Faulkner Cnty.*, 630 F.3d 1098, 1107 (8th Cir. 2011); *Becker v. Knoll*, 494 F.3d 904, 920 (10th Cir. 2007); *see also United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 67 (1993) (Rehnquist, J., concurring) ("Compliance with the standards and procedures prescribed by the Fourth Amendment constitutes all the 'process' that is 'due' . . . under the Fifth Amendment in the forfeiture context.").

[279] *DeLade v. Cargan*, 972 F.3d 207, 210 (3d Cir. 2020) (internal quotation marks and citations omitted).

legislature.[280]  The absolute protection of state sovereign immunity extends even to intentional torts and willful misconduct.[281]  State officers are thus wholly protected unless their conduct falls within an exception to immunity,[282] or they are found to have acted outside of the scope of their employment.[283]

The Pennsylvania Supreme Court has "long held that whether a particular act of an employee is within the scope of his employment is ordinarily a question of fact for the jury."[284]  "[T]he only exception to this well-established rule is where neither the facts nor the inferences to be drawn from them are in dispute."[285]  In such instances, the court may address the issue as a question of law.[286]  Nevertheless, the officers invoking the protection of state sovereign immunity bear the burden of proving its applicability.[287]

To establish that Defendants acted outside the scope of their employment, Plaintiffs may show that they lacked probable cause to initiate the May 2013

---

[280]  1 Pa. C.S.A. § 2310.

[281]  *Justice v. Lombardo*, 208 A.3d 1057, 1066 & n.9 (Pa. 2019) (comparing immunities for willful misconduct where misconduct committed by local agency employees as opposed to state officials).

[282]  These exceptions, inapplicable to the present case, permit liability for: (1) operation of a motor vehicle; (2) medical-professional conduct; (3) the care, custody, or control of personal property; (4) maintenance of state real estate, highways, and sidewalks; (5) repair of potholes; (6) the care, custody, or control of animals; (7) liquor-store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse.  42 Pa. C.S.A. § 8522.

[283]  *Justice*, 208 A.3d at 1067 (citations omitted).

[284]  *Id.* at 1068.

[285]  *Id.*

[286]  *Id.*

[287]  *Id.*

searches or to charge Minuteman and Brian Bolus with any offense.[288]  But, as discussed above, the undisputed facts demonstrate that probable cause existed. Consequently, Defendants satisfy the requirements of establishing the defense of state sovereign immunity and are entitled to summary judgment on all state-law claims.

## X.    CONCLUSION

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[288] *See Renk v. City of Pittsburgh*, 641 A.2d 289, 293-94 (Pa. 1994); *Justice*, 208 A.3d at 1071-73.